Sidney R. LIPMAN, Harold T. McNeil, Plaintiffs,

v.

COMMONWEALTH OF MASSACHU-SETTS and Edward V. Keating, as he is Clerk for Criminal Business, Suffolk Superior Court, Defendants.

Civ. A. No. 70–502.

United States District Court,
D. Massachusetts.

April 15, 1970.

Jerome P. Facher, Gordon T. Walker, Hale & Dorr, Boston, Mass., for plaintiffs.

Walter H. Mayo, III, James Kiernan, Asst. Attys. Gen., Boston, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action in which plaintiffs, both of whom are court reporters, seek temporary and permanent injunctive relief and money damages. The matter came before the Court upon plaintiffs' application for a preliminary injunction and upon defendants' motion to dismiss. The motion to dismiss will be treated as a motion for summary judgment, pursuant to Rule 12(c), Federal Rules of Civil Procedure, because at the hearing held thereon the Court was presented with matters outside the pleadings, including nine documentary exhibits for plaintiffs, three documentary exhibits for defendants, and the testimony of three witnesses for plaintiffs and one witness for defendants.

Jurisdiction of this court is based on 28 U.S.C.A. § 1331(a). The complaint alleges that rights under the Fifth and Fourteenth Amendments to the United States Constitution are at issue herein. The complaint is technically defective in that it fails to allege that the jurisdictional amount of $10,000 is involved herein. This, of course, can be cured by an amendment to the complaint.

On the basis of the record before me, I find the following facts:

Plaintiffs are so-called "free lance" court reporters, who earn their living by recording and transcribing proceedings in courts, before administrative bodies, and in connection with judicial proceedings both in court and out of court, at depositions, etc. The defendant Edward V. Keating is the Clerk for Criminal Business of the Suffolk Superior Court, Commonwealth of Massachusetts. Plaintiff Lipman was requested both by Edmund Dinis, District Attorney for the Southern District of Massachusetts, and by Judge James A. Boyle of the District Court of Dukes County, to serve as the court reporter at the inquest held in the District Court of Dukes County concerning the death of Mary Jo Kopechne. Thereafter, plaintiff McNeil agreed with Lipman to join him in the performance of this task. The District Court of Dukes County has no regular or official court reporter, and it is not the practice in that court to transcribe its proceedings. Mr. Dinis testified, and I find, that he was advised by Judge Boyle that the District Court of Dukes County had no funds for the employment of a court reporter for the inquest and had no jurisdiction to obtain same. As a result of this conversation, Mr. Dinis, purporting to act under the authority of Mass.General Laws, ch. 12, proceeded to make arrangements for the services of Mr. Lipman at the inquest. Prior to retaining him, Mr. Dinis advised Mr. Lipman that there probably would be a substantial delay in his obtaining payment from Dukes County but he also expressed the opinion to Mr. Lipman that because of the public interest in this inquest, Mr. Lipman probably would have the opportunity of selling a substantial number of transcripts to representatives of various news media which would mitigate the financial impact of the delay in payment on the part of Dukes County. Mr. Lipman testified, and I find, that he accepted the engagement in the belief that he would be able to sell a substantial number of copies of the transcript to representatives of the news media on a daily copy basis, and Mr. Lipman testified, and I find, that in reliance on that expectation he made arrangements and incurred expenses to prepare himself and his staff to make a large number of daily copies of the transcript available to the news media at Edgartown. He testified to the existence of contracts executed prior to September 5, 1969, between him and various newspapers, radio-television stations, national magazines, etc., for at least forty-one copies of daily transcript. Prior to September 5, potential witnesses at the inquest brought a proceeding in the Supreme Judicial Court which delayed the inquest and culminated in an order which rendered the contracts for delivery of daily copy legally impossible to perform.

Plaintiffs' principal contention herein is that they have a contractual right under a contract with Dukes County to distribute and sell transcripts of this inquest, which they say is a property right being taken from them by the defendants without due process and without just compensation, in violation of their rights under the Fifth Amendment to the Constitution.

The terms of the alleged contract are said to be found in plaintiffs' Exhibit 3, the letter from Mr. Dinis to plaintiff Lipman dated August 11, 1969, supplemented by certain oral additions thereto. An examination of the contents of that letter, and the entire testimony of Mr. Dinis and Mr. Lipman, fails to establish the existence of a contract of the type contended for by plaintiffs. I find and rule that the only contract shown by the evidence herein to be valid-

ly made was a contract under which Mr. Dinis obligated Dukes County to pay Mr. Lipman, as official court reporter, for the preparation of an original plus one copy of the transcript of the inquest. Plaintiffs have failed to cite any authority or produce any evidence tending to show that Mr. Dinis had any authority to bind either Dukes County or the Commonwealth of Massachusetts with regard to the reproduction and distribution rights of this official transcript. It is significant to note that plaintiffs have as yet made no claim on Dukes County for compensation for either the original or for the original plus one copy, which the evidence indicates they supplied to the Clerk of the District Court for Dukes County.

I find that the evidence proffered in an attempt to establish that there is a custom and usage for court reporters to sell plural copies of official transcripts is not persuasive on the facts of the instant case. None of the witnesses who testified on the subject had any personal experience with transcribing or selling plural copies of inquest transcripts. Mr. Lipman testified that he had no prior experience of the custom because this was the first inquest with which he was ever connected. Mr. Burt testified that he had never served as reporter at an inquest and that his office had attended inquests only on the request of a potential defendant and that his firm had no experience dealing with a situation like the instant case where a plurality of transcripts was requested by non-parties or non-witnesses or representatives of news media.

With further respect to the question of custom and usage, I rule that the legal effect of the opinion of the Supreme Judicial Court, reported in the case of Kennedy v. Justice of the District Court of Dukes County, Mass., 252 N.E.2d 201, 1969 Adv.S., p. 1239, Oct. 30, 1969, so completely changes the procedural law of the Commonwealth, with regard to the manner of conducting an inquest and the manner of handling the record thereof, as to remove any proba-tive value from the sparse evidence which alluded to procedures at inquests conducted prior to the date of that opinion.

It should be noted that since 1859, the General Laws have provided that Superior Court clerks are custodians of the records, not only of those courts but, also, such records of other courts as are transferred to the Superior Court. Mass.G.L., ch. 212, sec. 26, provides in pertinent part:

"The records of courts which are transferred to the Superior Court shall remain in custody of its clerks. * * * Copies of said records may be certified by said clerks respectively. * * * "

This section, which allows Clerks to certify records, by obvious implication also allows them to reproduce records. Even if plaintiffs had succeeded in proving herein the existence of a contract executed by Mr. Dinis purporting to give them exclusive rights to reproduction of these records, such a contract would not appear to be enforceable since, by its terms, it would be in conflict with the controlling provisions of Section 26.

Plaintiffs' alternate contention that they had a valid common law copyright in the transcript is not supported by the authorities relied on in their brief. On the contrary, the transcripts in question are, and at all material times were intended to be, public documents, a character which they did not lose because of their temporary impoundment pending the happening of one of the contingencies described on page 1249 of the opinion of the Supreme Judicial Court in Kennedy v. Justice, *supra*. No authority is cited by plaintiffs, nor can any be found by this Court's research, to establish that a court reporter may acquire a copyright interest in a transcript he prepares in the course of his duties as court reporter. From the nature of court transcripts they would appear to be beyond the protection extended thus far by any reported case, federal

or state, interpreting the copyright laws.

In the light of the foregoing it is not necessary to consider the issue of sovereign immunity.

It should be noted, however, that this Court is not unsympathetic to the plight of plaintiffs and other free lance court reporters serving in the courts of the Commonwealth. Plaintiffs' rights and position herein would be totally different had the General Court enacted a law similar to 28 U.S.C.A. § 753, which governs court reporters in the federal trial courts. Congress provided, in pertinent part, in 753(f):

> "Each reporter may charge and collect fees for transcripts requested by the parties * * * at rates prescribed by the court * * *."

and this, of course, confers rights on federal court reporters which plaintiffs are not able to establish herein absent similar state legislation.

The plaintiffs' motion for preliminary injunction is denied. Defendants' motion for summary judgment is allowed.

Judgment accordingly.