**Sidney R. LIPMAN and Harold T. McNeil**

v.

**COMMONWEALTH OF MASSACHU-SETTS and Edward V. Keating.**

**Sidney R. LIPMAN and Harold T. McNeil**

v.

**COMMONWEALTH OF MASSA-CHUSETTS.**

Civ. A. Nos. 70-502-C, 70-552-C.

United States District Court,
D. Massachusetts.

Aug. 1, 1972.

---

12. When the Control Data stock was sold, there was a loss on the stock of $9,136.55.

**524**

Jerome P. Facher, Blair L. Perry, Gordon T. Walker, Hale & Dorr, Boston, Mass., for plaintiffs.

Walter H. Mayo III, James P. Kiernan, Asst. Atty. Gen., Boston, Mass., for Commonwealth of Mass.

James W. Kelleher, George J. Leary, Kevin M. Keating, Boston, Mass., for Edward V. Keating, Clerk for Criminal Business Attys.

## OPINION

CAFFREY, Chief Judge.

The above-captioned cases, which were consolidated for trial, are both civil actions brought by "free lance" court reporters against the Commonwealth of Massachusetts and the Clerk for Criminal Business of the Suffolk Superior Court. A second defendant originally named in Civil Action No. 70–552, the Honorable James A. Boyle, Justice of the District Court of Dukes County, was dismissed from that case on motion of plaintiffs. The basic facts which underlie this controversy are set out in an opinion previously filed in Lipman v. Commonwealth of Massachusetts, D.C., 311 F.Supp. 593 (1970).

The judgment entered as a result of the findings described *supra* was vacated without opinion by the Court of Appeals for the First Circuit and thereafter these cases came on for consolidate. trial by jury. After a jury was impaneled, both parties waived trial by jury and the case was tried to the court on the basis of the record already in existence, plus additional evidence. After trial, I find and rule as follows:

I. *As to the defendant Keating*: The issue to be resolved as to Mr. Keating is whether his actions fell under the umbrella of judicial or quasi-judicial immunity. The Supreme Court in Barr v. Matteo, 360 U.S. 564 at p. 569, 79 S.Ct. 1335, at p. 1338, 3 L.Ed.2d 1434 made the observation:

> "This Court early held that judges of courts of superior or general authority are absolutely privileged as respects civil suits to recover for actions taken by them in the exercise of their judicial functions, irrespective of the motives with which those acts are alleged to have been performed, Bradley v. Fisher, 13 Wall. (U.S.) 335, [20 L. Ed. 646,] and that a like immunity extends to other officers of government whose duties are related to the judicial process."

It is clear that the phrase "other officers of government" includes a clerk of court. The Court of Appeals for the First Circuit has extended judicial immunity to the clerk of a state district court in Sullivan v. Kelleher, 1 Cir., 405 F.2d 486, at p. 487 (1968) with the observation:

> "Since the immunity accorded to judges 'extends to other officers of government whose duties are related to the judicial process' . . . it follows that the defendant cannot be held personally liable for any defects in service of process, if indeed there were such defects . . ."

A similar ruling was made in this court by Judge Gignoux, sitting by designation, in Rudnicki v. McCormack, 210 F.Supp. 905 at p. 907 (D.C.Mass. & R. I. 1962):

> . . . "Under the circumstances here disclosed, the same immunity from suit under the Civil Rights Act attaches to the non-judicial defendants in these actions. There can be no question but that the acts of which the

plaintiff complains were performed by these defendants in discharge of their official duties . . . it being the duty of the Clerk of United States District Court for the District of Massachusetts to receive and file papers submitted to his office in pending litigation . . . Such cases as Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961) [cert. denied, 369 U.S. 868, 82 S.Ct. 1032, 8 L.Ed.2d 87 (1962),] Dunn v. Gazzola, [216 F.2d 709 (1st Cir., 1954),] Francis v. Lyman, 216 F.2d 583 (1st Cir., 1954) and Rhodes v. Houston, 202 F.Supp. 624 (D.Neb. 1962) make clear that public officials such as these, when performing their official duties, enjoy the same immunity from civil liability as that extended to judges in the performance of their judicial functions."

To the same effect see Gregoire v. Biddle, 177 F.2d 579 (CA 2 1949); Barr v. Matteo, 360 U.S. 564, 571, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

▮ I find that in the instant case the individual defendant, Edward V. Keating, was acting at all times pursuant to and within the scope of his official duties as clerk of the Superior Court. I find that all of his actions relating to the distribution of copies of the transcript of the inquest were the result of directions to him from either a judge or judges of the Superior Court, or as a result of directions from a justice or justices of the Supreme Judicial Court, and that the orders of the judges or justices all were related to an application filed by plaintiffs for the release to them of the *Kopechne* transcript.

▮ II. *As to the Commonwealth of Massachusetts*: I rule that at the most recent hearing held in this case nothing was adduced by plaintiffs to necessitate any alteration of any of the findings made on April 15, 1970. I find and rule that no binding contract was made between plaintiffs and any one authorized to bind the Commonwealth or its Courts with regard to the reproduction and sale of multiple copies of the transcript. Nor have plaintiffs succeeded in estab-

lishing any custom or usage for court reporters to sell to non-parties plural copies of an official inquest transcript. Accordingly, I readopt and incorporate by reference all of the findings set out in Lipman v. Commonwealth of Massachusetts, *supra*.

None of the witnesses called by plaintiff at the final hearing in this case had any personal experience transcribing or selling plural copies of inquest transcripts to non-parties.

The evidence given by four court reporters called as witnesses by plaintiff fails to sustain plaintiff's burden of proving the existence of a custom or usage under the terms of which a court reporter has a right to sell multiple or plural copies of an inquest transcript to a substantial number of persons who are not parties in interest to the inquest.

Specifically, Miss Germaine Letoile testified as to her 18 years experience as an official court stenographer for the Suffolk Superior Court, but she frankly conceded that she never recorded, reported, or sold the transcript of any inquest proceedings under Chapter 38 of the General Laws. She additionally testified that she had sold copies of the transcript to interested non-parties in only two litigations out of all she has recorded in the 18 years. These two litigations were the so-called Small-Loan cases and the Supreme Judicial Court's hearing of the so-called "DeSaulnier-Brogna" matter. Miss Letoile further testified that she was free during the Small-Loan cases to sell daily copy because "it was done with the permission of the court in advance". She added *"we just don't do this without permission of the court"*. Miss Letoile further conceded on cross-examination that she did not claim that any one had to get her permission to reproduce transcript she had recorded.

Raymond Lerschen a court reporter with an usual place of business in Minneapolis, Minnesota testified that he is a free lance court reporter but that previously he had been an official court reporter in the State of Minnesota for 42

years. Mr. Lerschen conceded he has never reported any proceeding, inquest or otherwise, in the Commonwealth of Massachusetts and that his experience is limited to states contiguous to Minnesota, namely, Wisconsin, Illinois, North and South Dakota. I rule that his testimony contributes nothing to the establishment of any custom or usage as to the handling and sale of inquest transcripts in the Commonwealth of Massachusetts or elsewhere.

Carl Daitch testified that he has been a free lance court reporter for 13 years, that he is presently employed in Boston, Massachusetts, that he had had experience with inquests in the state of Florida, but that his work in Massachusetts has been primarily as a reporter for administrative agencies, such as the Department of Public Works, the Department of Public Utilities and various Boards of Registration, such as engineering, optometry, embalming, etc. His experience consisted of selling 99% of his transcripts to parties of record in the hearing and I rule that his testimony likewise fails to establish the existence of any custom or usage with regard to the sale of plural copies of inquest transcripts, as to which, Mr. Daitch has, as a practical matter, no experience.

Finally, Lawrence W. Burt, who testified at the April 1970 hearing in this matter, testified that since April of 1970 he has searched his records and discovered his office has participated in taking the testimony at five inquests. Mr. Burt did not testify that he sold copies to any of these inquests in large numbers nor did he sell copies to non-parties in interest. In fact the only inquest as to which Mr. Burt offered specific testimony was as to an inquest in the Third District Court of Eastern Middlesex held December 20, 1971 after the decision of the Supreme Judicial Court Kennedy v. Justice of Dukes County, 356 Mass. 367, 252 N.E.2d 201 (1969) after which inquest Mr. Burt sold five copies, two to the Penn Central Transportation Company, one to the Department of Public Utilities of the Commonwealth of Massachusetts, one to the District Attor-

ney and the fifth to an attorney in private practice. Mr. Burt volunteered that as far as he knew neither a certificate by the presiding justice nor a certificate of non-prosecution by the District Attorney has been filed at the time he sold these copies which strongly suggests that the procedure followed by him in this case was illegal because it fails to comply with the directives of the Supreme Judicial Court in Kennedy v. Justice of Dukes County, *supra*. Such an apparent failure to follow a ruling of the Supreme Judicial Court can hardly be found to establish a custom or usage.

Suffice it to say, for present purposes, I find and rule that the four court reporters who testified totally failed to offer any evidence sufficient to form a basis on which a finding could be made as to the existence of a custom or usage giving a court reporter the exclusive right to sell plural copy of a Massachusetts inquest.

■ As a separate and additional ground of decision in this case, it should be noted that even if there were a custom or usage by which the courts of the Commonwealth allowed court reporters exclusive right to negotiate for the sale of a plurality of transcripts of an inquest, plaintiffs herein still may not successfully maintain an act of contract against the Commonwealth because of the provisions of the 11th Amendment to the Constitution of the United States which bars an unconsented to suit against a state. There is no showing herein that Sovereign Immunity under the 11th Amendment has been waived by the Commonwealth of Massachusetts by any conduct which falls within the reach of the Supreme Court's decision in Parden v. Terminal Railroad Co., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). Rather the situation herein is governed by such long standing Supreme Court decisions as In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887), Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1889). *Cf.* Daye v. Pennsylvania, (E.D.Pa.) 344 F.Supp. 1337 (1972).

Judgment accordingly.