**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Nick SENAK, Defendant-Appellee.**

**No. 72–1431.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 5, 1972.

Decided April 24, 1973.

Rehearing Denied June 5, 1973.

David L. Norman, Asst. Atty. Gen., Robert A. Murphy, Atty., Civil Rights Division, Department of Justice, Washington, William C. Lee, U. S. Atty., Fort Wayne, Ind., for plaintiff-appellant.

Max Cohen, Gary, Ind., for defendant-appellee.

Before FAIRCHILD, PELL, and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

In February 1972, a federal grand jury returned a five-count indictment against Nick Senak, a public defender for Lake County, Indiana. The indictment charged that Senak, while acting under color of law, "willfully and unlawfully exacted and took" money from various persons, thereby willfully depriving those persons of their right under the Fourteenth Amendment not to be deprived of property without due process of law, in violation of 18 U.S.C. § 242.[1] More specifically, notwithstanding his appointment under Indiana law as a "pauper attorney," by virtue of which he was entitled to governmental compensation,[2] Senak had allegedly exacted fees

---

1. 18 U.S.C. § 242 provides in pertinent part:

"Whoever, under color of any law, statute, ordinance, regulation or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges or immunities secured or protected by the Constitution or laws of the United States . . . [is guilty of an offense.]"

2. Ind.Ann.Stat. § 4–5716, Burns' 1968 Repl., IC 1971, 33–9–6–1, authorizes criminal court judges in counties having a population of 400,000 or more to appoint public defenders to defend any poor person accused of the commission of a crime who lacks the means to employ an attorney. If it appears to the judge that a person previously deemed to be a "poor person" has funds to pay for counsel, the county attorney is to sue for recovery

from a pauper "client" (Count I) and from friends or relatives of other impoverished "clients" (Counts II–V) by threatening inadequate legal representation of those he had been appointed to represent unless the extra sums were paid to him.

On March 27, 1972, the district court reluctantly sustained Senak's pre-trial motion to dismiss the indictment on the ground that the indictment failed to state an offense against the United States. The Government seeks reversal of the court's order dismissing the indictment.

We must, as an initial matter, determine whether the Government is barred from maintaining this appeal. The indictment involved in this appeal is the second against Senak under 18 U.S.C. § 242. An indictment returned in May 1971 had been dismissed by the district court on October 19, 1971, on Senak's motion. The Government had filed a notice of appeal as to that dismissal but later had moved successfully under Rule 42(b), Fed.R.App.P., to dismiss its appeal. Senak claims that the second indictment is substantially the same as the first one and that "[w]hen the Government abandoned the appeal [of the dismissal of the May 1971 indictment] and the appeal was dismissed for want of prosecution, the judgment of the district court was in effect affirmed and now bars the second indictment on principles of res judicata, collateral estoppel and former jeopardy."

■■■ The cases on which Senak relies, including this court's decision in United States v. Ponto, 454 F.2d 657 (7th Cir. 1971) (en banc), are distinguishable. A federal grand jury may return a second indictment for the same offense when the first indictment has been dismissed or otherwise found defective. United States v. Root, 366 F.2d 377, 383 (9th Cir. 1966), cert. denied,

386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967); Buie v. United States, 76 F.2d 848, 849 (5th Cir. 1935), cert. denied, 296 U.S. 585–586, 56 S.Ct. 97, 80 L.Ed. 414 (1936); United States v. Manetti, 323 F.Supp. 683, 690–691 (D.Del. 1971). *Cf.* 18 U.S.C. § 3289. Further, we disagree that the Government's decision not to pursue its appeal precluded the grand jury from returning another indictment on the same matter. *Cf.* United States v. Beard, 414 F.2d 1014, 1017 (3d Cir. 1969). Senak was not put in jeopardy; jeopardy is usually held to "attach" at the time trial commences and a jury is impanelled. See United States v. Jorn, 400 U.S. 470, 480, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *cf.* Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). We therefore hold that the second indictment was not barred.

■■■ Rule 7(c), Fed.R.Crim.P., requires that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense." "The true test of the sufficiency of an indictment is . . . whether it contains the elements of the offense intended to be charged." Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932), quoted in United States v. Debrow, 346 U.S. 374, 376, 74 S.Ct. 113, 98 L.Ed. 92 (1953). The elements of an 18 U.S.C. § 242 offense are: (1) the defendant's acts must have deprived someone of a right secured or protected by the Constitution or laws of the United States; (2) the defendant's illegal acts must have been committed under color of law; (3) the person deprived of his rights must have been an inhabitant of a State, Territory, or District; and (4) the defendant must have acted willfully. *See* United States v. Jackson, 235 F.2d 925, 927 (8th Cir. 1956). Only elements (1) and (2) are in dispute on this appeal.

of a reasonable sum for the services rendered by the public defender. The sums recovered go into the general county fund. The compensation to be paid public defenders is determined by the criminal court judges and comes from public funds. § 4–5717, IC 1971, 33–9–6–2.

Senak contends that a public defender is immune from liability under § 242 and that, once he is appointed in a given case, he does not act under color of state law but functions purely as a private attorney. For this proposition, Senak relies on Brown v. Joseph, 463 F.2d 1046 (3d Cir. 1972), where the question was whether a Pennsylvania county public defender could be held liable for damages in an action brought by a former indigent client who alleged constitutional deprivations under 42 U.S.C. § 1983, the civil counterpart of 18 U.S.C. § 242. The district court there held that the complaint failed to state a claim upon which relief could be granted on the basis that the defendant was not acting under color of state law. On appeal, the Third Circuit decided it need not reach the "under color of any law" question. The court instead held that a county public defender enjoys immunity from liability under the Civil Rights Act.

Brown, supra, the one case Senak cites on this issue, is inapposite. The court's remarks about "color of law" are dicta. Further, an examination of the holding there reveals that the court was concerned with immunity for state judges, prosecutors, and public defenders "for acts done in the performance of [their] judicial function[s] . . . ." 463 F.2d at 1048. The court recognized an exception to immunity where the officials' acts are clearly outside the scope of the officials' jurisdiction. Id. Also, the court emphasized certain policy considerations which are irrelevant to the charge in the indictment before us, e. g., the importance of encouraging the officials' "free exercise of professional discretion in the discharge of pre-trial, trial, and post-trial obligations." Id.

Senak provides neither binding precedent nor persuasive reasons to lead us to conclude that the Government would be unable, as a matter of law, to satisfy the "color of law" requirement. See United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941): "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." See generally Screws v. United States, 325 U.S. 91, 107–111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). At this juncture we do not know, for example, in what words Senak couched his alleged demands for money or what representations he made to the alleged "victims." Nor do we know all the conditions that attached to Senak's appointment as public defender, i. e., the duties and ethical conduct required by law of someone assuming such a position. If the indictment is sufficient in other respects, the Government should be given the opportunity to try to establish that Senak acted "under color of . . . law."

The district court's objections to the indictment centered on the supposed absence of the "deprivation of a constitutional right" element. Implicit in its discussion, however, were doubts about the "under color of any law" requirement. In the court's view, to hold that the defendant, by charging a fee, had deprived the named persons of property without due process of law was "to strain that concept well past its breaking point."

The "constitutional deprivation" element of the section 242 offense charged here consists of three concepts: the right to "property," a "deprivation," and "due process." It is clear that the right to acquire, enjoy, own, and dispose of property is protected by the Constitution. Each count of the indictment against Senak referred to the named person's right to property under the Fourteenth Amendment and specified the form of that property (money) and the approximate amount allegedly taken. Cf. United States v. Konovsky, 202 F.2d 721, 726 (7th Cir. 1953).

A more difficult problem is whether Senak's alleged conduct constituted a "deprivation" under the Constitution. The district court considered that term to import a "taking" in the sense of "a nonconsensual divestiture compelled by legal authority" and reluctantly conclud-

ed that the indictment failed to allege such a "taking":

> "When the verbiage concerning 'taking' and 'exaction' is stripped away, all that [the indictment] alleges is a successful demand for money in exchange for the performance of a pre-existing legal duty. . . . The fatal defect in the indictment here is that it fails to allege that defendant's 'victims' were ever under any legal obligation to pay the sums demanded. . . . [N]o such obligation in fact existed.

> Unless the defendant's demands . . . are backed by the power of the state, there is no 'taking' in a constitutional sense."

In its prior opinion sustaining the motion to dismiss directed to the first indictment, which opinion was incorporated by reference in the second opinion, the district court stated: "There is no claim that those charged [a fee] were ever under any compulsion, legal *or otherwise*, to pay. . . ." (Emphasis added.)

It would seem obvious that there was no legal compulsion. Senak was being paid by the state and could not have successfully claimed any additional compensation from those he represented, either directly or vicariously. However, that he had no legal right to the money he supposedly collected or that the named "victims" might have asserted a successful defense to a suit by him for payment does not preclude the possibility that Senak "deprived" those persons of their property. *See* United States v. Barr, 295 F.Supp. 889 (S.D.N.Y.1969); *cf.* Culp v. United States, 131 F.2d 93 (8th Cir. 1942).

■ It appears to us that reality is ignored to say that there is no compulsion "otherwise" on an impoverished person who has supposedly been provided with legal representation or on his relatives and close friends when they are confronted with a demand from that counsel, ostensibly by virtue of his appointment "backed by the power of the state," for additional compensation if there is to be adequate representation. The constitutional right to appointed counsel does not contemplate any standard less than adequate representation.

We are not here dealing with the inherent variation in legal skills existing from lawyer to lawyer. Attorneys appointed to represent indigents, like retained counsel, undoubtedly will possess varying degrees of legal acumen; none, however, should be purposely inadequate. When the matter is baldly put as a choice between adequate representation possibly followed by an acquittal and inadequate representation which could reasonably assure a conviction, the choice is surely of the Hobson variety.

The litigant with means can choose his counsel. The pauper cannot, and his constitutional right to appointed counsel has has not been extended to the point of affording him this privilege. That it has not been should be no basis for exposing him to the necessity of trying by some means to gather together funds to compensate the attorney whom he has not selected and who has told him that without those funds he would not be competently represented.

Finally, we note that a "deprivation" does not have to be authorized by state law. *See, e. g.,* Catlette v. United States, 132 F.2d 902, 905 (4th Cir. 1943). A defendant must act "under color of . . . law," but his acts need not have been in compliance with the law. United States v. Wiseman, 445 F.2d 792, 796 (2d Cir. 1971), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287. The Government claims that Senak's official position enabled him to perpetrate a scheme of obtaining money to which he was not entitled. His being county public defender allegedly gave him the opportunity to make the demands and clothed him with the authority of the state in so doing.

In sum, we think that the district court construed the "deprivation" requirement too narrowly.

By emphasizing compulsion and coercion, the district court seemed to suggest

that "deprivation" is a taking accomplished without adherence to proper procedures. The term "deprivation" by itself, however connotes neither legality nor illegality. The portion of the Fourteenth Amendment with which we are concerned in this case—"nor shall any State deprive any person of life, liberty, or property, without due process of law" —indicates that the violation of due process standards makes a particular "deprivation" an objectionable, illegal "deprivation." *Cf.* Lynch v. Household Finance Corp., 405 U.S. 538, 552, 92 S. Ct. 1113, 31 L.Ed.2d 424 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). That is, the Amendment focuses on the means by which the "deprivation" is achieved.

The Government argues that "the named victims possessed certain constitutional rights both before and after defendant's appointment [as public defender]; specifically, each citizen's basic, continuing right to use and control his own property until such time as he voluntarily disposes of it . . . or it is taken from him through means consistent with due process standards . . . ."

In our opinion, the indictment satisfactorily alleges a violation of that constitutional right.

Senak argues by way of conclusion that "[a]t best, the indictment alleges a procedural violation of State law by the defendant." As we have explained, we find that the indictment does allege a violation of federal rights. Senak's assertion prompts the recall of Mr. Justice Frankfurter's challenging words, "The history of liberty has largely been the history of observance of procedural safeguards." McNabb v. United States, 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943).

We thus disagree with the district court's assessment that this case does not warrant the exercise of federal jurisdiction. We do, however, understand the court's apprehension that the Government has opened a Pandora's box. We have held that the particular indictment before us adequately states an offense under 18 U.S.C. § 242; we intimate no opinion about the sufficiency of other possible indictments under section 242 involving different factual situations.

The order dismissing the February 1972 indictment is reversed, and the cause is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

FAIRCHILD, Circuit Judge (concurring).

While I agree that the instant indictment states an offense against the United States under 18 U.S.C. § 242, the legal theory upon which the indictment is grounded does not, in my view, satisfactorily grapple with the primary "deprivation" effected by defendant's alleged conduct.

The right of indigents to appointed counsel is guaranteed by the Sixth Amendment. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). And, the "essence of this right is the right to effective, competent and adequate representation." Wilson v. Phend, 417 F.2d 1197, 1199 (7th Cir. 1969). See also, Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1968). Thus, if an appointed attorney threatens to provide less than adequate legal services for an indigent defendant unless paid additional sums, he in effect subjects that defendant to a deprivation of his Sixth Amendment rights.

It is this subjection of an indigent to deprivation of his Sixth Amendment rights which is the real harm posed by defendant's alleged conduct. Accordingly, the indictment would be better framed if it focused upon this reality.