James **MORROW**, Plaintiff,

v.

Robert **IGLEBURGER** et al., Defendants.

Civ. No. C–3–74–93.

United States District Court, S. D. Ohio, W. D.

Oct. 25, 1974.

James Morrow, pro se.

Lee C. Falke, Pros. Atty., James A. Brogan, First Asst. Pros Atty., Wayne P. Stephan, Legal Asst. Pros. Atty., Lillian M. Kern, Asst. Pros. Atty., Dayton, Ohio, for Ralph Harper, Cecil Edwards, Lee C. Falke, James A. Brogan, Leonard Zdara, Robert Skinner, Bernard Keiter, Sgt. M. L. Casey, Six Deputies, Jesse Yoder, Paul Sherer, Stanley Phillips, Robert McBride, Susan Secrest, and Elizabeth Grant, and the Ohio Casualty Ins. Co., and The Cincinnati Ins. Co.

William J. Brown, Atty. Gen. of Ohio, Richard B. Igo, Asst. Atty. Gen., Columbus, Ohio, for William Brown, Members of the Ohio Parole Board, Bennett Cooper, Robert Baker, Harold Cardwell, E. B. Haskins, J. P. Canney, J. E. Griffith, John Gilligan, and Paul Sherer.

Patrick A. Flanagan, pro se.

Anthony R. Kidd, pro se.

John W. Kessler, pro se.

Bruce Beemer, pro se.

James W. Drake, City Atty., H. Donald Hawkins, Asst. City Atty., Dayton, Ohio, for Robert Igleburger, Fredrick Severance, Sgt. Howard Florkey, Robert Hill.

Gary W. Crim, Dayton, Ohio, for Clarence J. Stewart.

No attorney for Phillip Otto Sigrest, or Robert Radabaugh.

## OPINION AND ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon motions to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., filed by thirty-five defendants out of thirty-seven parties defendant. The parties have submitted motions, replies, supplemental memorada, affidavits, and exhibits in support of their respective positions. The essential determination in considering a Rule 12(b)(6) motion to dismiss is whether the plaintiff has failed to state a claim upon which relief can be granted.

The plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1985. His complaint speaks in terms of confiscation of legal materials while imprisoned, denial of access to a law library while imprisoned, denial of access to medical care while imprisoned, and beatings by certain parties defendant. This Court's jurisdiction has thus been properly invoked under 42 U.S.C. §§ 1983 and 1985, pursuant to 28 U.S.C. § 1343.

Certain motions that have been presented to the Court have been pleaded in terms of motions for summary judgment pursuant to Rule 56, Fed.R. Civ.P. A court has the power to reform the nature of pleadings so as to conform them to the evidence and arguments, Rule 15(b) Fed.R.Civ.P. Defendant Flanagan's Motion for Summary Judgment is therefore reformed to a Rule 12(b)(6) Motion to Dismiss, and defendant Stewart's Motion for Judgment on the Pleadings is also hereby reformed to a Rule 12(b)(6) Motion to Dismiss. Plaintiff Morrow's Request for a Mental Examination, and defendant's Motion to Strike Out Complaint and Dismiss Action for Failure of Plaintiff to Give Deposition will not be considered at this time. All other pending motions will be disposed of by this Opinion and Order.

Due to the large number of parties defendant, and the numerous official and professional positions which they hold, the motions to dismiss may be grouped into several manageable categories. The specific grounds upon which these motions will be considered are five: (I) Judicial Immunity and Quasi-Judicial Immunity; (II) Attorneys' Exclusion from the "Under Color of" State Law Definition; (III) Failure of Jurisdiction as to certain Defendants; (IV) Qualified Immunity for the Police; and (V) Limitations Statutes Considerations.

## I.

### JUDICIAL IMMUNITY AND QUASI-JUDICIAL IMMUNITY

■ Nearly one-half of the defendants in this case are employed in positions that may be termed either judicial or quasi-judicial. Concerning persons in such positions generally, there has been a determination on the basis of public policy to grant an immunity from suit. The seminal cases supporting this immunity are Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871), and Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1966).

> [I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.

Bradley v. Fisher, *supra* 80 U.S. (13 Wall.) at 347.

At the time of the *Bradley* case the initial Civil Rights Acts were passed. But it was not until many decades later that a conflict between these Acts and the judicial immunity doctrine arose. The argument that "any person" language in 42 U.S.C. §§ 1983 and 1985 can overcome the doctrine has been disposed of by Supreme Court case law holding otherwise.

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335 [20 L.Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, *supra*, 13 Wall. 349, note, at 350.)

Pierson v. Ray, *supra*, 386 U.S. at 554, 87 S.Ct. at 1217–1218.

One of the more perplexing problems surrounding the conflict between the Civil Rights Acts of the Reconstruction Era and the judicial immunity doctrine is to what extent that immunity must be extended to other "judicial officers,"

Bradley v. Fisher, beyond the obvious protection of judges. The process of extending the judicial immunity concept has come under the heading of "quasi-judicial immunity." The Ninth Circuit case of Robichaud v. Ronan, 351 F.2d 533 (9th Cir. 1965), contains an excellent summary of the history of the quasi-judicial immunity concept.

The earliest federal case which refers to "quasi judicial immunity" appears to be Yaselli v. Goff, 12 F.2d 396, 56 A.L.R. 1239 (2d Cir. 1926), aff'd per curiam, 275 U.S. 503, 48 S. Ct. 155, 72 L.Ed. 395 (1927). There, it was held that a prosecuting attorney was immune from suit for malicious prosecution, regardless of the existence of malice or wilfulness on his part. In its opinion the court wrote:

"A United States attorney, if not a judicial officer, is at least a quasi judicial officer, of the government. He exercises important judicial functions, and is engaged in the enforcement of the law."

12 F.2d at 404.

The court continued,

"The immunity is absolute, and is founded on principles of public policy. The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the governments should speak and act freely and fearlessly in the discharge of their important official functions. They should be no more liable to private suits for what they say and do in the discharge of their duties than are the judges and jurors, to say nothing of the witnesses who testify in a case."

12 F.2d at 406.

It is upon Yaselli that the concept of immunity for prosecuting attorneys, as quasi-judicial officers is founded. See, e. g., Kenney v. Fox, 232 F.2d 288, 290 (6th Cir. 1956), cert. denied

sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L.Ed.2d 66 (1956).

"A prosecuting attorney is a quasi-judicial officer and enjoys the same immunity from civil action for damages as that which protects a judge acting within his jurisdiction over the parties and the subject matter of the litigation."

Robichaud, supra at 536.

It therefore appears that the judicial immunity concept is not only firmly founded in our law as pertains to judges, but extends beyond them to prosecutors and others as a quasi-judicial immunity protecting judicial officers. In this case there are nine different classifications of positions whose holders are named as parties defendant. The issue of immunity will be discussed separately as to each of them.

## A. STATE JUDGES

Defendants Cecil Edwards, Stanley Phillips and Robert McBride are all Judges in Montgomery County Courts System in the State of Ohio; and defendant Paul Sherer is a judge of the Second District Court of Appeals in the State of Ohio.

United States Supreme Court Law, Pierson v. Ray, supra, and the United States Court of Appeals for the Sixth Circuit, Saier v. State Bar of Michigan, 293 F.2d 756, (6th Cir. 1961), cert. den. 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343; Ray v. Huddleston, 212 F.Supp. 343 (W.D.Ky.1963), aff'd 327 F.2d 61 (6th Cir. 1964); Jones v. Perrigan, 459 F.2d 81 (6th Cir. 1972), are quite clear in affording immunity from suit to such defendants.

In Saier v. State Bar of Michigan, supra, Judge Cecil, in regards to a suit under the Civil Rights Act against state judges in the State of Michigan stated that:

Judges are immune from suit arising out of their judicial acts and the

civil rights statutes create no exception to this rule. (Citations omitted). *Saier v. State Bar of Michigan, supra,* 293 F.2d at 761.

It is therefore clear that defendant Judges Cecil Edwards, Stanley Phillips, Robert McBride, and Paul Sherer are immune from suit under the Civil Rights Acts and they must be dismissed from this action for failure of the plaintiff to state a claim against them upon which relief can be granted. Rule 12(b)(6), Fed.R.Civ.P. *See also:* Bradley v. Fisher, *supra;* Pierson v. Ray, *supra;* Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964); Sires v. Cole, 320 F.2d 877 (9th Cir. 1963); Harmon v. Superior Court, 329 F.2d 154 (9th Cir. 1964); Kostal v. Stoner, 292 F.2d 492 (10th Cir. 1961), cert. den. 369 U.S. 868, 82 S.Ct. 1032, 8 L.Ed.2d 87 (1962).

## B. PROSECUTING ATTORNEYS

Defendant Lee C. Falke has been sued as an individual and as the Prosecuting Attorney of Montgomery County, Ohio. The Ohio Casualty Insurance Company has been sued as the carrier of his faithful performance bond. It is regarding prosecuting attorneys that the concept of quasi-judicial immunity was developed. (*See* Robichaud v. Ronan, *supra.*) The principles underlying this immunity are set forth most clearly in the Third Circuit case of Bauers v. Heisel, 361 F.2d 581 (3rd Cir. 1966):

> In deciding the question of whether a prosecuting attorney is liable for acts done in his official capacity, we must decide whether his duties are sufficiently judicial as to cloak him with the same immunity afforded judges or officials as to amerce him with potential civil liability for his imprudent actions. *See* Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Comment, 18 Ark.L.Rev. 81, 84–92 (1964). Analogy could support either conclusion, but we believe that both reason and precedent require that a prosecuting attorney should be granted the same immunity as is afforded members of the judiciary. The reasons are clear: his primary responsibility is essentially judicial—the prosecution of the guilty and the protection of the innocent, Griffin v. United States, 295 F. 437, 439–440 (C.A.3, 1924); his office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest. In this respect, it is imperative that he enjoy the same freedom and independence of action as that which is accorded members of the bench. This reasoning is nearly as well established in Anglo-American law as judicial immunity itself. Yaselli v. Goff, 12 F.2d 396 (C.A.2, 1926), aff'd per curiam "on the authority of Bradley v. Fisher * * * [and] Alzua v. Johnson, 231 U.S. 106, 111 [34 S.Ct. 27, 58 L.Ed. 142]," 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), and numerous cases and authorities cited therein. Prosecuting attorneys who have been sued under the Civil Rights Act, R.S. § 1979, have likewise been held immune. Laughlin v. Rosenman, 82 U.S.App. D.C. 164, 163 F.2d 838 (1947); Kenney v. Fox, *supra,* and other cases cited in note 7, *supra.*

Bauers v. Heisel, *supra,* at 589, 590.

*See also:* Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964), cert. den. 379 U.S. 867, 85 S.Ct. 137, 13 L.Ed.2d 70 (1964); Rhodes v. Houston, 202 F.Supp. 624 (D. Neb.1962), aff'd 309 F.2d 959 (8th Cir. 1962), cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 (1963); Kostal v. Stoner, *supra;* and Yaselli v. Goff, 12 F.2d 396 (2d Cir. 1926).

The United States Court of Appeals for the Sixth Circuit has recognized quasi-judicial immunity for prosecutors in three of the leading cases on the subject; Kenney v. Fox, 232 F.2d 288 (6th

Cir. 1956), cert. den. sub nom. Kenney v. Killian, 352 U.S. 855, 77 S.Ct. 84, 1 L. Ed.2d 66; Hurlburt v. Graham, 323 F. 2d 723 (6th Cir. 1963); and Hilliard v. Williams, 465 F.2d 1212 (6th Cir. 1972). Hilliard v. Williams is especially noteworthy since it is the leading Sixth Circuit case setting forth the *limitations* on a prosecutor's immunity. For a prosecutor to be protected, however, his acts must be within the scope of his jurisdiction and must be authorized by law. From a thorough reading and analysis of the documents filed in this case the Court concludes that defendant Falke's actions were within the scope of his jurisdiction and were authorized by law.

Since defendant Falke's actions have met the *Hilliard* requirements to bring him within the quasi-judicial immunity protection, he is immune from suit under the Civil Rights Acts. Therefore, defendants Lee C. Falke and the Ohio Casualty Insurance Company must be dismissed from this action for the failure of the plaintiff to state a claim against them upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## C. ASSISTANT PROSECUTING ATTORNEY

Defendants James Brogan, Leonard Zdara, and Robert Skinner have been sued as individuals and as Assistant Prosecuting Attorneys of Montgomery County, Ohio. It is not difficult, once the quasi-judicial immunity for prosecuting attorneys is clearly established, to extend such immunity to an assistant prosecuting attorney. The functions, duties, and responsibilities are substantially identical and the necessary protections should be identical. The United States Court of Appeals for the Sixth Circuit has recognized such an extension in Puett v. City of Detroit, 323 F.2d 591 (6th Cir. 1963):

It seems clear that under the principle of judicial immunity no cause of action lies against . . .

the Assistant Prosecuting Attorney . . .

Puett v. City of Detroit, *supra* at 593.

The same limitations must be placed on this immunity for assistant prosecuting attorneys as on the immunity for prosecuting attorneys themselves. The acts of these defendants must also be within the scope of their jurisdiction and authorized by law, as required by Hilliard v. Williams, *supra.* From a thorough reading and analysis of the documents filed in this case the Court concludes that the defendant assistant prosecuting attorneys acted within the scope of their jurisdiction and under authorization of law.

Since these defendants' actions have met the *Hilliard* requirement, they are immune from suit under the Civil Rights Acts. Therefore, defendants James Brogan, Leonard Zdara, and Robert Skinner must be dismissed from this action for the failure of plaintiff to state a claim against them upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## D. STATE ATTORNEY GENERAL

Defendant William Brown has been sued as an individual and as the Attorney General of the State of Ohio. The protection afforded by the quasi-judicial immunity doctrine has been repeatedly extended to state attorneys general.

A State's Attorney and a State Attorney General are immune from liability for damages allegedly flowing from acts committed in the performance of their duties.

Modern Social Education, Inc. v. Preller, 353 F.Supp. 173, 183 (D.Md.1973), a suit against the Attorney General of the State of Maryland.

As regards the permissive grant of immunity in Civil Rights suits against state attorneys general see also: Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir. 1964), a suit against the Attorney Gen-

eral of the State of New York; Turner v. Baxley, 354 F.Supp. 963 (D.Vt.1972), a suit against the Attorney General of the State of Vermont; and for the seminal case regarding Attorneys General, see Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. den. 339 U.S. 949, 70 S. Ct. 803, 94 L.Ed. 1363, suit against two successive Attorneys General of the United States in which immunity was found and the suit dismissed by Chief Judge Learned Hand.

The immunity protection for a state attorney general cannot, of course, be absolute, but must be limited by restrictions similar to those imposed upon prosecuting attorneys in general. As stated in Wilhelm v. Turner, 298 F. Supp. 1335 (S.D.Iowa 1969), a suit against the Attorney General of the State of Iowa:

> It is only when the Attorney General or his staff act clearly outside their jurisdiction that they lose their immunity.

Wilhelm v. Turner, *supra* at 1338, citing Bauers v. Heisel, *supra*.

From a thorough reading and analysis of the documents filed in this case the Court concludes that the actions of the Defendant Attorney General of the State of Ohio, William Brown, were within the scope of his jurisdiction and were authorized by law.

Since the defendant's actions have met the requirements to bring him within the quasi-judicial immunity protection, he is immune from suit under the Civil Rights Acts. Therefore, defendant William Brown must be dismissed from this action for the failure of the plaintiff to state a claim against him upon which relief can be granted, Rule 12(b)(6), Fed. R.Civ.P.

### E.  PUBLIC DEFENDERS

Defendants John Kessler and Bruce Beemer have been sued as individuals and as Public Defenders of the City of Dayton, Ohio. The protection af-forded by the judicial immunity doctrine has also been specifically extended to public defenders.

The legislative history of 42 U.S. C. § 1983 does not indicate that Congress intended to "abolish wholesale all common law immunities" Pierson v. Ray, supra 386 U.S. 547, 555 [87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1966)]. In part because of the same factors which lead us to think that state subsidized and appointed *public defenders* can act under color of state law, we conclude that *public defenders,* like state prosecutors, and state and city attorneys, enjoyed a qualified immunity for acts performed in the discharge of their official duties. [citations omitted]. We note that the extension of immunity to *public defenders* will encourage their free exercise of discretion in the performance of professional obligations, as well as aid in the recruitment of able men and women for *public defender* positions. [emphasis added].

John v. Hurt, 489 F.2d 786, 788 (7th Cir. 1973), a suit against the Public Defender of Macon County, Illinois; *see also* Brown v. Joseph, 463 F.2d 1046 (3d Cir. 1972), cert. den. 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003, granting immunity in a suit against the Public Defender of Allegheny County, Pennsylvania.

In John v. Hurt, quoted above, the Court distinguished United States v. Senak, 477 F.2d 304 (7th Cir. 1973). *Senak* sets the limitations on the immunity doctrine for public defenders. That case is distinguishable on its facts in that it was "charged that public defender had exacted fees from a pauper client and from friends and relatives of other impoverished clients by threatening inadequate legal representation of those he had been appointed to represent unless extra sums were paid to him," United States v. Senak, *supra* at 304. In the

instant case no such allegations were made and no threats of inadequate representation are alleged. It is also clear to the Court, from a thorough reading and analysis of the documents filed in this case, that the actions of the Public Defenders, John Kessler and Bruce Beemer, must be dismissed from this action for the failure of plaintiff to state a claim against him upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## F. CLERKS OF COURT

Defendant Jesse Yoder has been sued as an individual and in his capacity as the Clerk of Courts of Montgomery County, Ohio. The protection afforded by the quasi-judicial immunity doctrine has also been specifically extended to Clerks of Court.

> This court and others have specifically held that *clerks of court* are entitled to immunity the same as judges. [emphasis added].

Davis v. McAteer, 431 F.2d 81, 82 (8th Cir. 1970).

> As regards the affirmative grant of immunity in Civil Rights suits against Clerks of Court *see also*: Rhodes v. Meyer, 334 F.2d 709 (8th Cir. 1964), cert. den. 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed.2d 186; Rhodes v. Houston, *supra*; Pritt v. Johnson, 264 F.Supp. 167 (D.C.Pa. 1967); Stewart v. Minnick, 409 F. 2d 826 (9th Cir. 1969); Ginsburg v. Stern, 125 F.Supp. 596 (W.D.Pa. 1954), aff'd 225 F.2d 245 (3d Cir. 1954); Niklaus v. Simmons, 196 F. Supp. 691 (D.Neb.1961).

The same limitation as applies to the immunity for other officers of the government must apply here. Accordingly, the Court finds from a thorough reading and analysis of the documents filed in this case that the defendant Clerk of Court, Jesse Yoder, was within the "scope of his official duties." Lipman v. Commonwealth of Massachusetts, 345 F.Supp. 523, 525 (D.Mass.1972), and were authorized by law.

Since this defendant's actions have met the requirements to bring him within the quasi-judicial immunity protection, he is immune from suit under the Civil Rights Acts. Therefore, defendant Jesse Yoder must be dismissed from this action for the failure of the plaintiff to state a claim against him upon which relief can be granted, Rule 12(b)(6), Fed. R.Civ.P.

## G. PAROLE BOARDS

The complaint also names members of the Ohio Parole Board as a party defendant. Although this is a slightly more controversial area, the protections of the quasi-judicial immunity doctrine have also been extended to parole boards and parole board members.

> The defendant Caracci, a *parole officer,* is generally immune from liability for a delegated discretionary act performed within his official capacity. [emphasis added]

Mann v. Snyder, 300 F.Supp. 1309, 1310 (E.D.Pa.1969).

> Defendants Reiber, Butler, and Garnet are all members of the Board, and as such, they are immune from suit for damages under the Civil Rights Act . . . Once the procedure has begun, the *parole officer* who is following his prescribed duties to aid the Board in its decision making process, is acting as a judicial officer, and hence, has the immunity which is granted to all judicial officers. [emphasis added].

Robinson v. Largent, 311 F.Supp. 1032 (E.D.Pa.1970).

> As regards the affirmative grant of immunity in Civil Rights suits against Parole Boards and Parole Board members, see also: Silver v. Dickson, 403 F.2d 642 (9th Cir. 1968), cert. den. 394 U.S. 990, 89 S. Ct. 1477, 22 L.Ed.2d 765 (1969); Richardson v. Rivers, 118 U.S. App.D.C. 333, 335 F.2d 996 (1964);

Belveal v. Bray, 253 F.Supp. 606 (D.Colo.1966).

Although a Parole Board is protected by the quasi-judicial immunity doctrine, said protection is not absolute, and in some situations the activities of a Parole Board may be inquired into by way of a § 1983 suit. Palermo v. Rockefeller, 323 F.Supp. 478 (S.D.N.Y.1971); United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1968). These cases, however, pertain to definite and specific instances of action, and the misuse of ordinary process by such Boards. Such cases hold actionable only actions of Parole Boards which exceed the ambit of the limitation litany of "outside the scope of their jurisdiction, and not authorized by law." In the instant case, however, after a thorough reading and analysis of the documents filed in this case, the Court concludes that the actions of the defendant members of the Ohio Parole Board were within the scope of their jurisdiction and were authorized by law.

Since such defendants' actions have met the requirements of the quasi-judicial immunity protection, they are immune from suit under the Civil Rights Acts. Therefore, defendant members of the Ohio Parole Board must be dismissed from this action for the failure of the plaintiff to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## H. PROBATION OFFICERS

Defendant Ralph Harper has been sued individually and in his capacity as a Montgomery County Probation Officer. The protection afforded by the doctrine of quasi-judicial immunity has also been extended to include Probation Officers.

The immunity of *probation officers* and investigators has received little discussion in the cases brought under the Civil Rights Act, most of which deal with prosecuting attorneys and law enforcement officers.

However, it seems readily apparent that in preparing and submitting a probation report on a defendant in a criminal case, such officers would be performing a "quasi-judicial" function, especially wherein they are acting under orders of the Court in rendering a report to that Court.

. . . . . .

The functions of a *deputy probation officer* and an adult probation investigator are "in the performance of an integral part of the judicial process," within the meaning of Robichaud v. Ronan, *supra,* 351 F.2d at 536, so as to dictate immunity from suit under the Civil Rights Act. . . . This immunity was recognized in the Ninth Circuit as to *probation officers* in Harmon v. Superior Court, 329 F.2d 154, 155 (9th Cir. 1964), where the Court stated "a like immunity extends to other officers of the government whose duties are related to the judicial process." [emphasis added].

Friedman v. Younger, 282 F.Supp. 710, 715-716, (C.D.Cal.1968).

*See also:* Burkes v. Callion, 433 F.2d 318 (9th Cir. 1970).

It is clear on precedential grounds and on public policy grounds that the qualified judicial immunity should be extended to Probation Officers, and even if that were not initially clear, an analogy between the functions and operations of Probation Officers and Parole Officers would require that the same immunity be extended as to Parole Officers in Section "G" above and must, by reason and logic, be extended to Probation Officers.

After a thorough reading and analysis of the documents filed in this case the Court concludes that the actions of defendant Probation Officer of Montgomery County, Ohio, Ralph Harper, were within the scope of his jurisdiction and were authorized by law. Since this defendant has met the requirements to

bring him within the quasi-judicial immunity protection, he is immune from suit under the Civil Rights Acts. Therefore, defendant Ralph Harper must be dismissed from this action for the failure of the plaintiff to state a claim against him upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## I. COURT REPORTERS

Defendants Susan Secrest and Elizabeth Grant have been sued in their individual capacities and as the Court Reporters for Judges Phillips and Edwards. The protection of the quasi-judicial immunity doctrine has been extended to Court Reporters, and it appears that the immunity for this class of judicial officer is nearly as encompassing as the immunity afforded to a Judge.

> It is clear that the action against the Judge and the *court reporter* cannot be maintained because of the traditional doctrine of judicial immunity, which was not abolished by § 1983.
>
> Brown v. Charles, 309 F.Supp. 817, 818 (E.D.Wis.1970).
>
> As regards the affirmative grant of immunity in Civil Rights suits against court reporters, see also: Dieu v. Norton, 411 F.2d 761 (7th Cir. 1969); Peckham v. Scanlon, 241 F.2d 761 (7th Cir. 1957); and, United States ex rel. Johnson v. Specter, 262 F.Supp. 113 (E.D.Pa. 1967).

Since defendants Susan Secrest and Elizabeth Grant are court reporters,

they qualify for the protection of the quasi-judicial immunity doctrine. Therefore, defendants Susan Secrest and Elizabeth Grant must be dismissed from this action for the failure of the plaintiff to state a claim against them upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## II.

## ATTORNEYS' EXCLUSION FROM THE "UNDER COLOR OF" STATE LAW DEFINITION; FAILURE OF JURISDICTION

Defendants Patrick Flanagan, Clarence Stewart, and Anthony Kidd have been sued as Attorneys at Law. For any plaintiff to allege a cause of action under 42 U.S.C. § 1983, he must meet the initial hurdle of demonstrating that the alleged defendant was acting "under color of" state law. The definition of "under color of" state law was developed and established in a line of cases dealing with 18 U.S.C. § 242.[1] This definition was permanently branded into the law of 42 U.S.C. § 1983 in the Supreme Court case of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1960). There the Court said, per Justice Douglas, that:

> Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.[2]

Monroe v. Pape, *supra* at 184, 81 S.Ct. at 482.

---

1. 18 U.S.C. § 242 is the criminal analogue of 42 U.S.C. § 1983, and is derived from the Civil Rights Act of 1866.

2. This definition of "under color of" state law is eloquently described as too broad by Justice Frankfurter in his dissent to *Monroe*. He looked to the development of the definition in a short line of three cases: United States v. Classic, 313 U.S. 299, 61 S. Ct. 1031, 85 L.Ed. 1368 (1941); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89

L.Ed. 1495 (1945); and, United States v. Williams, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758 (1951); and contended that the definition there developed should not be merely adopted as *stare decisis*, but should be reconsidered in light of (1) the fact of the insignificant amount of argument on that point in those cases; (2) the Congressional debates showing a different meaning behind the phrase; (3) the contrary judicial interpretation of the phrase for over 150 years preceding *Classic*, and especially in the Civ-

The United States Court of Appeals for the Sixth Circuit has consistently held that attorneys are not involved in state action (i. e., are not acting "under color of" state law even by Justice Douglas' expansive definition in Monroe v. Pape) when they appear for a client in state courts. In Kenney v. Fox, 232 F.2d 288 (6th Cir. 1956), the Court upheld a lower court's dismissal of a claim by a person who had been confined in a mental institution against the attorney who had prepared the initial papers. In a similar case, Cooper v. Wilson, 309 F. 2d 153 (6th Cir. 1962), the Court said:

> Appellee, acting as a private lawyer, charged with making false statements in sanity proceedings which resulted in appellant's commitment to Longview State Hospital, a mental institution, was not amenable to action based on the civil rights statute.

Cooper v. Wilson, *supra* at 154.

More recently, in Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968), the Court said:

> With regard to the allegation that appellee Safir represented appellant inadequately, no cause of action has been stated because § 1983 provides a remedy only against one acting under color of state law. Safir, a private attorney, does not fall within this category, despite the fact that he had been appointed by the court.

Mulligan v. Schlachter, *supra* at 233.

Most of the cases in this area involve the fact situation of a Court appointed attorney being sued by his criminal defendant client after having displeased the client in some way. That is the context in which the private attorney comes closest to being a "judicial officer" and thereby almost obtaining the immunity protection. But, the failure of jurisdiction in § 1983 suits against private attorneys extends even into the area of private attorneys engaged in private litigation.

> Lawyers who are not also parties in interest and are engaged in private litigation on behalf of clients do not act under color of state law within the meaning of 42 U.S.C. § 1983. . . . The state merely provides a forum for the litigants and although lawyers are considered "officers of the court," they are not officers of the state within the meaning of the Civil Rights Act.

Jones v. Jones, 410 F.2d 365, 366 (7th Cir. 1969).

This position, of the failure of § 1983's jurisdiction regarding attorneys, is the position taken by a clear majority of the circuits: Page v. Sharpe, 487 F. 2d 567 (1st Cir. 1973); Stewart v. Meeker, 459 F.2d 669 (3d Cir. 1972); Fletcher v. Hook, 446 F.2d 14 (3d Cir. 1971); Schack v. Starr, 440 F.2d 378 (5th Cir. 1971); for the Sixth Circuit see the cases cited in the text *supra*; French v. Corrigan, 432 F.2d 1211 (7th Cir. 1970); Barnes v. Dorsey, 480 F.2d 1057 (8th Cir. 1973); Szijarto v. Legeman, 466 F.2d 864 (9th Cir. 1972); Sinclair v. Spatocco, 452 F.2d 1213 (9th Cir. 1971), cert. den. 409 U.S. 886, 93 S. Ct. 102, 34 L.Ed.2d 142.

Therefore, since the instant defendants are attorneys at law, the plaintiff has failed to allege any actions by said defendants Patrick Flanagan, Clarence Stewart, or Anthony Kidd which would bring them within the jurisdiction of the Civil Rights Acts, because their actions were not actions "under color of" state law, within the judicial interpretation given to that phrase, they must be dismissed due to the failure of the plaintiff to state a claim upon which relief can be granted, Rule 12(b)(6), Fed.R. Civ.P.

---

il Rights cases in the late 1800's; and, (4) the distinction between the nature of the statutes involved, e. g., in *Screws, Classic*

and *Williams* the statute involved provided for a criminal remedy, whereas § 1983 provides for a civil remedy.

## III.

### FAILURE OF JURISDICTION AS TO CERTAIN OTHER DEFENDANTS

#### A. THE "SIX DEPUTIES"

█ Among the numerous named defendants there is a caption which reads, "SIX DEPUTIES individually and as DEPUTY SHERIFFS OF MONTGOMERY COUNTY, OHIO." Since the alleged defendants are nowhere named in the Complaint, and since they have not been, and cannot be, served with process in this case, they must be dismissed for want of jurisdiction in this Court.

The United States Court of Appeals for the Seventh Circuit has confronted this identical issue, and we will follow their opinion holding that:

> The district court had no jurisdiction over defendants designated in the complaint as "Unknown Subjects and Party(s)" since they were not named and served with summons and a copy of the complaint.

United States ex rel. Lee v. Illinois, 343 F.2d 120, 121 (7th Cir. 1965).

#### B. THE GOVERNOR OF THE STATE OF OHIO

█ Defendant John Gilligan is the Governor of the State of Ohio, and he is being sued as such and as an individual. As the Governor of a state he is protected from suit under the Civil Rights Act on two grounds.

The Governor of a state is protected against this type of suit when his actions are within the sphere of his executive activity. This was well stated and well supported by the United States Court of Appeals for the Fifth Circuit in Martone v. McKeithen, 413 F.2d 1373 (5th Cir. 1969):

> The Governor of the State has immunity from damage suits for acts within the sphere of executive activity. Barr v. Matteo, 1959, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949); Norton v. McShane, 332 F.2d 855 (5th Cir. 1964). As Judge Learned Hand said in Gregoire v. Biddle, *supra*, 177 F.2d at 581: "The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

Martone v. McKeithen, *supra* at 1375.

Secondly, as the chief executive officer of the State, the Governor is a representative of the State. A suit against him for actions taken within the sphere of his executive activity is a suit against the state itself which is barred by the Eleventh Amendment to the United States Constitution. The principle was well stated by Chief Judge Field in Kirker v. Moore, 308 F.Supp. 615 (S.D. W.Va.1970):

> [I]t would appear that the plaintiffs in this case are confronted by the insuperable barrier of the 11th amendment since it is now well settled that under the amendment a state is immune from suit in a federal court by its own citizens. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Whether the action is a suit against a state within the meaning of the amendment is to be determined by the character of the proceeding and the relief sought rather than the mere names of the titular parties to the litigation. [citations omitted]

Kirker v. Moore, supra at 624.

From a thorough reading and analysis of the documents filed in this case, this Court concludes that Governor John Gilligan has been sued as a representative of the State of Ohio and that his actions were within the sphere of his executive activity and authorized by law.

Since this defendant's actions have met the requirements to bring him within his executive immunity, and within the protection of the Eleventh Amendment, he is immune from suit under the Civil Rights Acts. Therefore, defendant Governor John Gilligan of the State of Ohio must be dismissed from this action for the failure of the plaintiff to state a claim against him upon which relief can be granted, Rule 12(b)(6), Fed.R.Civ.P.

## IV.

## QUALIFIED IMMUNITY FOR THE POLICE

█ Regarding suits under § 1983 against police officers there exists a "qualified immunity." Qualified immunity differs from immunity doctrines in a strict sense. The qualified immunity is in actuality a defense that may be asserted by a police officer and it does not cause an action to fail at the outset for failure to state a claim upon which relief can be granted.

The United States Court of Appeals for the Sixth Circuit and the United States Supreme Court are in complete harmony on this point, as the following cases demonstrate:

> The immunity of law enforcement officers from false arrest liability is a qualified one, in the nature of an affirmative defense. Immunity is available only if the officer acted in good faith [and] with probable cause.
>
> Jones v. Perrigan, 459 F.2d 81, 83 (6th Cir. 1973)

> The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one.
>
> Pierson v. Ray, *supra,* 386 U.S. at 555, 87 S.Ct. at 1218.

> We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is

also available to them in the action under § 1983. This holding does not, however, mean that the count based thereon should be dismissed.

> Pierson v. Ray, *supra* at 557, 87 S.Ct. at 1219.

> *See also:* Reilly v. Doyle, 483 F.2d 123 (2d Cir. 1973).

It is clear, therefore, that this qualified immunity exists only as a defense. When a plaintiff alleges a claim for which relief could legally be granted if his allegations are true, he overcomes the hurdle of Rule 12(b)(6), Fed.R.Civ. P., and the police may then present their defense by way of an Answer or a Motion for Summary Judgment.

## V.

## STATUTES OF LIMITATIONS CONSIDERATIONS

█ The arguments of counsel regarding the possible bar to this suit imposed by the Ohio Revised Code Statutes of Limitations are not apposite.

Among the plaintiff's numerous allegations are claims that would sound in assault and battery. Since the complaint was not filed until the fifth day of June, 1974, O.R.C. § 2305.11 setting a one year limitation for the bringing of assault and battery actions might bar that particular claim. However, the plaintiff has alleged numerous deprivations of his rights, and numerous fact situations which are clearly not connected with assault and battery, or with bodily injury (O.R.C. § 2305.10; two year limitation). A few of these allegations are set forth in the second paragraph of this Opinion and Order.

This Court therefore concludes that the applicable statute of limitations is either O.R.C. § 2305.09 providing for four years to file regarding "certain torts," or O.R.C. § 2305.14 providing for ten years for relief not specifically provided for in other limitations statute sections. The specificity in the pleadings as to times and dates is not such as

to permit this Court to determine, at this time, which of these two statutes applies in this case; and therefore, the portions of the Motions for Dismissal that pertain to Statutes of Limitations and advocate the dismissal of this suit are hereby denied. The Court will reconsider such motions should the evidence upon trial so require.

In this case plaintiff Morrow has stated a claim for which relief could be granted, if his allegations are true and can be proved, against the defendants not heretofore dismissed. There has been no proof offered and no facts stated which would substantiate the defense asserted by the remaining defendants. Their Motions to Dismiss must therefore be, and are hereby, denied.

The denial of certain defendants' Motions to Dismiss does not reach the question of presence or absence of genuine issues of material fact, or indicate in any way how this Court might rule on a Rule 56 Motion for Summary Judgment.

In summary, the Court has taken the following action:

1. Motion to Dismiss for Failure to State a Claim filed 7/1/74; Supplementary Memorandum thereto filed 9/3/74; granted as to defendants Ralph Harper, Cecil Edwards, Lee C. Falke, James Brogan, Leonard Zdara, Robert Skinner, Six Deputies, Jesse Yoder, Paul Sherer, Stanley Phillips, Robert McBride, Susan Secrest, and Elizabeth Grant; said defendants are hereby dismissed; denied as to defendants Bernard Keiter and Sgt. M. L. Casey.

2. Motion to Dismiss for Failure to State a Claim filed 7/3/74; granted as to defendants William Brown, Members of the Ohio Parole Board, John Gilligan, and Paul Sherer; said defendants are hereby dismissed; denied as to defendants Bennett Cooper, Robert Baker, Harold Cardwell, E. B. Haskins, J. P. Canney, and J. E. Griffith.

3. Motion for Summary Judgment filed 7/9/74; reformed to Motion to Dismiss for Failure to State a Claim; granted as to defendant Patrick Flanagan; said defendant is hereby dismissed.

4. Motion to Dismiss for Failure to State a Claim filed 7/9/74; granted as to defendant Anthony Kidd; said defendant is hereby dismissed.

5. Motion to Dismiss for Failure to State a Claim filed 7/9/74; Supplemental Memorandum in Support filed 8/23/74; granted as to defendants John Kessler and Bruce Beemer; said defendants are hereby dismissed.

6. Motion to Dismiss for Failure to State a Claim filed 7/9/74; Supplemental Memorandum in Support filed 8/23/74; denied as to defendants Robert Igleburger, Frederick Severance, Sgt. Howard Florky, and Robert Hill.

7. Motion to Dismiss for Failure to State a Claim filed 7/19/74; granted as to defendant Ohio Casualty Insurance Company, said defendant is hereby dismissed.

8. Motion to Dismiss for Failure to State a Claim filed 7/19/74; denied as to defendant Cincinnati Insurance Company, since certain employees of Montgomery County, Ohio remain potentially liable in this action, and said Cincinnati Insurance Company carries the "Faithful Performance Blanket Bond Coverage" for said defendant County employees.

9. Motion for Judgment on the Pleadings filed 8/16/74; reformed to a Motion to Dismiss for Failure to State a Claim; granted as to defendant Clarence Stewart; said defendant is hereby dismissed.

10. Motion for Summary Judgment filed 8/30/74; reformed to a Motion to Dismiss for Failure to State a Claim and consolidated with prior motion of 7/9/74; granted as to defendants John Kessler and Bruce Beemer; said defendants are hereby dismissed.

The Court is not aware of any filings having been made by defendant Phillip

Otto Sigrest, or by defendant Robert Radabaugh.

There are two other Motions that remain pending in this case: plaintiff's Request for a Mental Examination, filed 10/19/74; and defendants' Motion to Strike Out Complaint and Dismiss Action for Failure of Plaintiff to Give Deposition.

In conformity with the Court's present dismissal of defendant Judge of the Common Pleas Court of Montgomery County, Ohio, Cecil Edwards, this Court is of the opinion that plaintiff's Request for Mental Examination made pursuant to Rule 35 of the Federal Rules of Civil Procedure is now moot. Accordingly, said Motion is hereby denied.

The Court's rulings in the present Opinion and Order in no way reflect on the disposition of the final remaining Motion regarding the failure of plaintiff to give a deposition. All other pending motions are disposed of by the present Opinion and Order.

It is so ordered.