**Arthur FANO et al., Plaintiffs,**

v.

**Larry MEACHUM et al., Defendants.**

**Civ. A. No. 74–5059–S.**

United States District Court,
D. Massachusetts.

Jan. 10, 1975.

Robert Stolzberg, Linda Olmstead, Roxbury Defenders Committee, Roxbury, Mass., for plaintiffs.

Michael C. Donahue, William T. Harrod III, Asst. Attys. Gen., Robert H. Quinn, Atty. Gen., Boston, Mass., for defendants.

## OPINION AND ORDER

SKINNER, District Judge.

This petition is brought under the Civil Rights Act, 42 U.S.C., Section 1983, for declaratory, injunctive, and compensatory relief by 17 inmates of the Massachusetts Correctional Institution, Norfolk, a medium security state prison operated by the Massachusetts Department of Correction. They allege, in substance, that they have been reclassified into substantially more adverse conditions of confinement because of specific prior conduct without the due process required by the Fourteenth Amendment to the Constitution of the United States.

The complaint was filed on November 4, 1974. The plaintiffs' motion for a

temporary restraining order was denied without hearing on the same day.

On December 12, 1974, six of the plaintiffs, namely Arthur Fano, Richard DeBrosky, Robert Dussault, David Hathaway, Richard McPherson and Charles Royce filed an Amended Verified Complaint on behalf of themselves and "all others similarly situated." There has been no showing which would justify the certification of this action as a class action and the Amended Verified Complaint, therefore, will be considered only with reference to the six named plaintiffs who have filed it. The same six plaintiffs (hereinafter referred to as the plaintiffs) have filed a motion for a preliminary injunction on which a hearing was held on December 20, 1974. The matter was presented on stipulations of fact, stipulated documents, and the testimony of the plaintiff Hathaway. There does not appear to be any material issue of fact.

## FINDINGS OF FACT

In the fall of 1974, there was a period of unrest among the inmates of M.C.I., Norfolk. From August 13, 1974 through October 23, 1974, there were nine fires in the institution, thought to have been set, which were serious enough to require the presence of outside fire departments. In addition, there were three less serious fires, one on October 25, 1974, one on October 31, 1974, and one on November 26, 1974.

Plaintiff McPherson was taken from the general population at M.C.I., Norfolk, on or about October 16, 1974, and placed in a cell in the Receiving Building at the institution (hereinafter referred to as the RB). On October 24, the plaintiffs Fano, DeBrosky, Dussault, Hathaway and Royce were taken from the general population and placed in cells in the RB.

The RB at M.C.I., Norfolk, is apparently principally used for the processing of new inmates. In effect, it also serves as an informal Departmental Segregation Unit, though it apparently has not been officially designated as such. The conditions of confinement in the RB are roughly comparable to those in the Departmental Segregation Unit, Cell Block 10, at M.C.I., Walpole, described in the Revised Opinion and Order in Daigle et al. v. Hall et al., CA 74-4783-S, filed January 7, 1975. No notice or hearing was afforded the plaintiffs before their transfer to the RB.

On October 25, 1974, the defendant Meachum filed and presented each plaintiff with a copy of a disciplinary report. The offenses charged against each plaintiff were described in substantially the same terms as appears in the notices of reclassification hearings hereinafter quoted. In each case the offense charged was referred to the local District Attorney for investigation and outside prosecution. Consequently, in accordance with paragraph VII D of Commissioner's Bulletin 72-1, no disciplinary hearing was held.

On November 4, 1974, each of the six plaintiffs received a Notice of Classification Hearing. With reference to the plaintiffs Fano, DeBrosky, and Dussault, the reason for review of the classification status was set forth as follows:

"The department has received information through a reliable source that you were in possession of instruments, or materials, that might be used as weapons and/or ammunition and that you had joined in plans to use these contraband items.

"These items and plans occurred during a period of serious unrest at MCI, Norfolk which included many fires that posed a significant threat to the lives of persons at MCI, Norfolk as well as serious property damage."

With respect to the plaintiffs Hathaway and McPherson, the reason for review of the classification status was stated as follows:

"The department has received information through reliable sources that you were significantly involved in the planning and execution of one or more of the serious fires occurring with

MCI Norfolk in the past few weeks. These fires caused considerable property damage and posed a very real threat to personal safety."

With respect to plaintiff Royce, the reason for review of the classification status was as follows:

"The department has received information through a reliable source that you were involved in the trafficking of contraband in MCI Norfolk, (narcotics, barbituates and/or amphetamines.) This occurred during a period of serious unrest at MCI Norfolk which included many fires, that posed a significant threat to the lives of persons at MCI Norfolk as well as serious property damage."

On November 6, 8, 11 and 13, classification hearings were held with respect to each of the six plaintiffs. Each plaintiff was represented by counsel. The evidence with respect to the alleged offenses committed by the plaintiffs, however, was given in closed session outside of the presence of the plaintiffs and their counsel and was apparently, in each case, in the form of recitation by the defendant Meachum of information purportedly furnished to him by a confidential informant. The nature of this information has never been made known to the plaintiffs or to their counsel even in summary form. They have not been informed of even so much as the dates and places of the alleged offenses.

The classification board made a recommendation for a transfer to either Walpole or Bridgewater in the case of each plaintiff except Royce, who was to be held in administrative segregation for thirty days and given a second classification hearing at the end of thirty days. Each plaintiff appealed this classification recommendation to the defendant Hall. The defendant Hall denied the appeals, but modified the recommendations of the classification committee and entered orders transferring all of the plaintiffs, including Royce, to MCI, Walpole, except Hathaway, who was ordered to be transferred to MCI, Bridgewater. At the time of the hearing all of these transfers had been accomplished except that of the plaintiff LeBrosky, who was in the hospital at MCI, Norfolk, and Hathaway, who was retained in the RB at MCI, Norfolk.

■ I find that the conditions of confinement at MCI, Walpole and MCI, Bridgewater, are substantially more adverse than they are at MCI, Norfolk. I further take judicial notice that these institutions have been deliberately differentiated to provide graduated conditions of confinement within the Department of Correction.

### RULINGS

This state of facts raises once again the issue of the subjection of prison inmates to what are essentially disciplinary procedures without the elements of due process required under the rule of Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). As in Daigle v. Hall, *supra*, a hearing before a disciplinary board was bypassed because the alleged offenses had been referred to the local District Attorney for investigation and prosecution. The applicable rules of law were extensively discussed by this court in the Revised Opinion and Order in Daigle v. Hall filed January 7, 1975, and need not be repeated here.

The defendants assert, however, that the cases of these plaintiffs do not fall within the general rule and that they have received all of the due process to which they are entitled, because the information concerning their alleged offenses was derived from confidential informants. The defendants claim that they are not obliged even to provide a summary of the information derived from the confidential informant, or even so much as the dates and places of the alleged offenses, because to do so would compromise the confidential informants. They further assert that the policy which they have followed in these cases is necessary to safeguard the lives of the confidential informants, to preserve the flow of information to the administra-

tion and to maintain the safety and good order of the institution.

The defendants apparently feel that they are unable, at the medium security institution at Norfolk, to follow the minimum requirements established for such situations at the maximum security prison at MCI, Walpole.

■ Institution Order 4310.1,* which is applicable to disciplinary hearings at Walpole, contains in Section 11.4 h) the following provisions:

"The board may issue any orders it deems necessary to conducting a thorough and adequate investigation, including the calling of witnesses and production of evidence. No testimony may be taken outside the accused resident's presence unless he voluntarily absents himself, or the board chairman determines that disclosure would involve.

(1) Subjecting the informant to a risk of harm or

(2) A substantial risk to institutional security

(3) On making a finding that a threat exists and that there is need for protection of sources, the board chairman will note such a finding in the hearing record

(4) He will also summarize the information in question for the accused resident and state generally the board's reasons for such protective action."

■ It is absolutely basic to any concept of due process that a person charged be given sufficient information concerning the charge against him so that he may intelligently prepare a defense. The above quoted Section 11.4 h) sets forth the constitutional minimum. The defendants thus have three constitutionally acceptable choices:

1. To follow a procedure substantially in accordance with the above quoted Section 11.4 h);

2. To develop independent evidence which would obviate the need for the confidential informant's testimony; or

3. To forego disciplinary action if the interest in preserving the secrecy of confidential information is deemed paramount.

■ It is clear that the procedure followed by the defendants with respect to these plaintiffs does not meet constitutional requirements of due process, and their actions with respect to these plaintiffs cannot be allowed to stand. The notice of the hearing, furthermore, must at the very least state the time and place of the alleged offense with reasonable accuracy.

■ Since uniformity is an aspect of due process in a correctional institution, the matters herein referred to should be the subject of departmental regulation. Most of these matters are covered by the order in Daigle v. Hall, *supra*. There is no evidence of any order in force at MCI Norfolk comparable to Institution Order 4310.1. Some regulation conforming in substance to Section 11.4 h) of that order must be promulgated. Whether it should be promulgated as a departmental order or left to the superintendents of the various institutions to produce approximate versions of it, is up to the defendants. Although Institution Order 4310.1 provides disciplinary hearing rules which exceed the minimum requirements of Wolff v. McDonnell, *supra*, there should be reasonable uniformity within the department; inmates at Norfolk are entitled to at least the level of due process afforded their brethren at Walpole.

■ In accordance with the foregoing, I hereby enter the following Preliminary Order.

---

* This Order was not introduced in evidence in this case, but in Daigle v. Hall, *supra*. The defendant Hall, at least, is charged with knowledge of it, and the Court takes judicial notice of it for purposes of this case.

PRELIMINARY ORDER

It is ordered, adjudged and decreed as follows:

1. The defendants are ordered to return the plaintiffs to the general population at MCI Norfolk forthwith, and not transfer them to conditions of confinements substantially more adverse than the conditions of confinement at MCI Norfolk by reason of their specific prior conduct, until they have been afforded a hearing substantially in accordance with the requirements of a disciplinary hearing as set forth in Commissioner's Bulletin 72–1 and Institution Order 4310.1; notwithstanding the fact that much specific prior conduct may have been referred to an outside law enforcement agency for investigation or prosecution.

2. The defendants Hall and Meachum, or either of them, are ordered to submit to the court for approval regulations governing the inmates at MCI Norfolk which will provide them with rights to hearings substantially in accordance with Institution Order 4310.1 and the orders of the court entered in Daigle v. Hall, *supra*.

3. Nothing herein contained shall prevent the defendant Meachum from placing the plaintiffs, or any other inmate, in the Receiving Building for a short period on an emergency basis if, in his considered opinion, the safety of inmates or the good order of the institution require it; provided that in every case an appropriate hearing be afforded the inmate as promptly as possible.

4. This case shall stand for further hearings on the claims of the other eleven plaintiffs and for hearings on the claims of all plaintiffs for damages.