Richard Lee OWEN, Plaintiff,

v.

Robert HEYNE, Cloid Shuler, Leo Jenkins, Jack Duckworth, Charles Adkins, Capt. O. C. Parks, Capt. E. R. Kozietak, Capt. O. N. Conrad, John Carter, Clark Mattotte.

No. S 75–166.

United States District Court,
N. D. Indiana,
South Bend Division.

Feb. 27, 1978.

Richard Lee Owen, pro se.

Theodore L. Sendak, Atty. Gen., Kermit Hilles and David A. Arthur, Deputy Attys. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM OPINION

ALLEN SHARP, District Judge.

Plaintiff, Richard Lee Owen, brought this civil rights action alleging violation of his civil rights by prison officials. This complaint is based on a series of events that occurred at the Indiana State Prison in the summer of 1975. Prison officials were aware of a growing unrest and tension at the prison both from observations by officers and reports by inmates. This unrest was believed to be fueled or incited by a group of inmates. In late July the prison was placed on deadlock by the Warden who then requested that his senior corrections officers make lists of those inmates they believed were instigating disorder. These lists were compiled and inmates whose names appeared on several lists were placed in I Cellhouse Detention Unit (IDU) for investigation of disruption of prison routine. Plaintiff was among these prisoners. He was placed in a cell in the IDU in which the commode had to be turned on by a guard outside the cell and which at first for a short period did not have a mattress or bedding. Subsequently the classification committee held hearings and reviewed the records of some of these inmates, including plaintiff, with possibility of reclassifying them to Administrative Segregation. Plaintiff attended a hearing before the committee and was allowed to discuss the matter with the committee. The Committee offered plaintiff a choice of returning to general population and participating in an eight week introduction to Transactional Analysis or remaining in IDU and participating in a rehabilitative program incorporating fundamentals of Transactional Analysis.

Plaintiff complained of the process by which he was selected to be placed in IDU under investigation. Where prison of-

ficials believe, in good faith, that they are confronted with an emergency situation they have greater discretion in determining measures to be taken and postponing procedural protection until after the event. *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977); *United States ex rel. Miller v. Twomey*, 479 F.2d 701 (7th Cir. 1973).

In situations such as the present, where prison authorities are allegedly reacting to emergency situations in an effort to preserve the safety and integrity of the institution, the state's interest in decisive action clearly outweighs the inmate's interest in a prior procedural safeguard. "[T]he possibility of widespread violence is a continuous condition of prison life. A good faith determination that immediate action is necessary to forestall a riot outweighs the interest in accurate determination of individual culpability before taking precautionary steps." *United States ex rel. Miller v. Twomey, supra*, 479 F.2d at 717. See also *Gomes v. Travisono*, 490 F.2d 1209, 1215 (1st Cir. 1973). *LaBatt v. Twomey*, 513 F.2d 641, 645 (7th Cir. 1975). Thus, good faith response to apprehended emergency conditions within a prison justifies postponing procedural protection unit after the event. *LaBatt*, 513 F.2d at 646. We also indicated that review of the exercise of discretion by prison authorities should be limited to situations where "bad faith or mere pretext on the part of prison authorities in the imposition of emergency procedures" is alleged. *LaBatt*, 513 F.2d 647. Absent an allegation of bad faith, "the underlying basis of decision must be deemed to be fully within [the] expertise and discretion [of prison officials] and, accordingly, is insulated from subsequent judicial review." *LaBatt v. Twomey*, 513 F.2d at 647. *Hayes v. Walker, supra*, at p. 633.

Before taking action Warden Jenkins sought the opinion of several of his advisors based on their observations, information, experience and knowledge of present and past behavior of prisoners. In a case involving an emergency where prison officials followed a similar procedure this approach was approved.

Under these (emergency) circumstances, the administration was fully justified in relying in part on the personal assessments of corrections officers and administrators who had personal knowledge of each inmate, where as here, each step in the procedure required a group decision. The impact of individual prejudices was thus minimized.

Similarly, the inmate's reputation in the institution was properly taken into account. I see no reason why prison inmates should escape their reputations any more than other people do. *Carlo v. Gunter*, 392 F.Supp. 871 (D.Mass.1975) at p. 878, aff. 520 F.2d 1293 (1st Cir. 1975).

Thus defendants followed an acceptable practice by taking emergency measures and following up with investigations or hearings.

■ Plaintiff also criticizes the procedure used in the classification hearing held August 13, 1975. It is well established that prison disciplinary hearings are required to meet some due process standards. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). However, the due process standards required in non-disciplinary classification proceedings or proceedings resulting in confinement in another institution of greater security or a more restricted area within the same institution is not so well settled. In the late 1960's and early 1970's as courts abandoned the traditional hands off policy, uncertainty developed as to several aspects of prison administration including this area. The United States Court of Appeals (First Circuit) took the initiative in extending due process rights to prisoners in inter-prison and intra-prison transfers.

The First Circuit attempted to establish transfer to another institution of higher security status, *Meachum v. Fano*, 387 F.Supp. 664 (D.Mass.1975), affirmed 520 F.2d 374 (1st Cir. 1975), reversed 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and classification to a more secure portion of the same facility, *Carlo v. Gunter, supra*, as a grievous loss and requiring due process.

However, since that time the authority of prison officials in this area has been clarified and strengthened. The United States Supreme Court reversed the First Circuit holding in *Meachum v. Fano,* and while the First Circuit holding in *Carlo v. Gunter* has not been specifically reversed, the Supreme Court ruling in *Meachum* undercut their findings:

> In a case significant in its factual similarity to the instant matter, *Carlo v. Gunter,* 392 F.Supp. 871 (D.Mass.1975), vacated 520 F.2d 1293 (1st Cir. 1975), the circuit court attached little significance to the fact that the "transfers" occurred within a single institution, Id., at 1296, and, relying upon its earlier holding in *Fano v. Meachum,* 520 F.2d 374 (1st Cir. 1975), concluded that due process required a hearing where a transfer resulted in more stringent conditions of confinement. The subsequent reversal of Meachum suggests that Carlo and the instant plaintiffs have no right to a hearing at all. *Hodge v. Klein,* 421 F.Supp. 1224 at p. 1232 (D.N.J.1976).

Other courts have ruled that the classification process should not be equated with disciplinary proceedings for purposes of due process. *Craig v. Hocker,* 405 F.Supp. 656 (D.Nev.1975).

■ In *Carlo* unlike this case there was apparently a total lack of a hearing or any sort of due process. While the court approved the method by which the inmates were selected for potential classification, it questioned the method of reclassification:

> The deficiency in the procedure was that adverse aspects of the inmate's record and unfavorable comments by prison staff were considered out of the inmate's presence. He had no opportunity to refute, rebut or explain them. This must be counted a serious deficiency.

> The question then is this:

> Was the detriment to the plaintiff in being reassigned to the "B" wing so severe as to require a hearing in which they had an opportunity to rebut, refute and explain adverse aspects of the record and unfavorable comments by officers?

In this case plaintiff did appear in person before the Classification Committee and was able to discuss his record with them before they made their decision. No witnesses were called but had there been any, defendants testified that cross-examination would have been allowed. No lay advocate was allowed but while lay advocates are permitted in disciplinary hearings in some circumstances this Court has been unable to find any case where counsel or lay advocates are required in classification proceedings. Classification hearings are not the same as disciplinary hearings, *Craig v. Hocker,* supra, and though the parameters of due process requirements in such cases are not settled yet it is highly probable that the classification committee's action is afforded plaintiff sufficient due process. Plaintiff appeared personally before the committee and was able to discuss his record with them which meets the major objections voiced by the Court in *Carlo v. Gunter.* Since the Committee called him on its own motion, this also met any requirement for confrontation of his accusers. The hearing dealt with his past record as reflected in his prison packet and no witnesses were called but had witnesses been called he would have had the opportunity to cross-examine them. Plaintiff was not allowed to call witnesses, however, since the hearing dealt specifically with plaintiff's record there was no necessity for witnesses.

Thus the prison's actions substantially comport with due process standards for classification. Even if these actions are found deficient based on development of the law, defendants should not be held liable for any deprivation of plaintiff's civil rights because of good faith belief that their acts and procedures were constitutional. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Knell v. Bensinger,* 522 F.2d 720 (7th Cir. 1975). The factual basis for such good faith in this record is very strong.

■ Plaintiff asserts a right to "refuse so called rehabilitation programs." Even assuming arguendo that an introductory

course to transactional analysis could be considered a rehabilitation program the cases cited do not establish that plaintiff has suffered infringement of any right. The primary case plaintiff relies on is *McNeil v. Director, Patuxent Institution,* 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed.2d 719 (1972) established only that a prisoner's sentence could not be extended merely for refusal to cooperate with officials by remaining silent. These are not the circumstances here and indeed there apparently was no requirement that plaintiff participate verbally in a transactional analysis program merely that he attend an introductory lecture course.

■ Plaintiff suffered no harm as a result of the commode having to be operated from outside the cell, though there may have been some inconvenience. The lack of a mattress and bedding in the cell does not appear to have been intentional on the part of corrections officers and was a function of the confusion caused by the unusual measures required to combat the emergency situation and the time that the lockup occurred. These problems do not constitute cruel and unusual punishment or shock the general conscience of society. *La Reau v. MacDougall,* 473 F.2d 974 (2d Cir. 1972), cert. den. 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973). None of these problems rise to a constitutional level for this Court's consideration.