**Rufus Lee AVERHART,
Plaintiff-Appellant,**

v.

**Albert TUTSIE, Parole Board Chairman,
et al., Defendants-Appellees.**

No. 78–2621.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1980.

Decided April 9, 1980.

William E. Marsh, Legal Service Organization, Indianapolis, Ind., for plaintiff-appellant.

David A. Arthur, Asst. Atty. Gen., Indianapolis, Ind., for defendants-appellees.

Before SPRECHER and WOOD, Circuit Judges, and BUA, District Judge.*

SPRECHER, Circuit Judge.

The primary issues raised in this appeal are (1) whether the Due Process Clause of the Fourteenth Amendment mandates more stringent procedures for parole release determinations than those followed by the Indiana Parole Board, and (2) whether the Indiana Administrative Adjudication Act (A.A.A.), Ind.Code § 4–22–1–1, et seq., applies to Parole Board proceedings. We hold that neither the Due Process Clause nor the Indiana A.A.A. applies to parole release determinations by the Indiana Parole Board.

I

Plaintiff, Rufus Averhart, is presently incarcerated in the Indiana State Prison pursuant to a conviction for involuntary manslaughter. On May 6, 1974, he was sentenced to a term of not less than two nor greater than twenty-one years, with 494 days credit for time spent in jail prior to sentencing. On September 27, 1978, plaintiff filed a *pro se* suit against the members of the Indiana Parole Board, requesting both injunctive and monetary relief under 42 U.S.C. § 1983.

Before filing suit, plaintiff had been denied parole five times, each time because of the seriousness of his offense with the additional reason on one occasion of unsatisfactory institutional conduct. Other inmates who had been denied parole because of the "seriousness or circumstances of the offense" filed briefs in this court as *amici curiae*. Plaintiff and *amici* argue that the procedures and practices of the Indiana Parole Board deprived them of due process of law as well as the rights to which they are entitled under the Indiana Administrative Adjudication Act. The district court found that the Indiana A.A.A. did not apply to Parole Board proceedings. Moreover, it concluded that while due process required certain safeguards in parole release proceedings, the Indiana parole procedure satisfied due process.

II

We will first consider whether the strictures of due process apply to the parole release procedures of the Indiana parole system. It is axiomatic that before due process protections can apply, there must first exist a protectible liberty or property interest. See, e. g., *Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–2706, 33 L.Ed.2d 548 (1972). Just last term, after the decision by the district court in this case, the United States Supreme Court considered whether inmates have a general, constitutionally protected interest in being conditionally released on parole before the expiration of a valid sentence. In *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Court concluded that an inmate does *not* have a protectible expectation of parole unless that expectation is created by a state statute. According to the Court, a validly obtained conviction, with all its procedural safeguards, extinguishes a convict's liberty in-

---

* Honorable Nicholas J. Bua, District Judge for the Northern District of Illinois, is sitting by designation.

terest in release. A state is under no constitutional obligation to create a parole system, and even when it does, the mere *possibility* of parole does not a *fortiori* result in a protectible expectation of release. Rather, the state statute must be phrased in such a way that it creates a real expectation of and not just a unilateral hope for parole. 442 U.S. at 7–8, 11–12, 99 S.Ct. at 2103–2104, 2105–2106.

█ The Court suggested that a determination by the highest court of a state would be important in ascertaining the scope of any interest a statute was intended to afford state prisoners. *Id.* at 12, 99 S.Ct. at 2106. Since the state courts of Nebraska had not considered the question, the Court made an independent determination. The *Greenholtz* Court found that Nebraska's pa-

role statute *did* create a protectible expectation of parole, but it emphasized that the Nebraska statute had unique structure and language.[1] Thus, whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis. The Court identified as crucial the language of the statute which mandated that the Nebraska Parole Board *shall* grant parole to an inmate *unless* one of four enumerated negative determinations are made.[2] *Id.* at 11–12, 99 S.Ct. at 2105–2106.

Unlike the Supreme Court in *Greenholtz*, we have the benefit of a decision by the highest court of Indiana interpreting the scope of interest created by the Indiana parole statute. Ind.Code §§ 11–1–1–7 to 11–1–1–14 & 11–1–1–26.[3] In *Murphy v.*

---

**1.** The Nebraska statute reads in pertinent part:
Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because:
(a) There is a substantial risk that he will not conform to the conditions of parole;
(b) His release would depreciate the seriousness of his crime or promote disrespect for law;
(c) His release would have a substantially adverse effect on institutional discipline; or
(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.
Neb.Rev.Stat. § 83–1,114(1) [emphasis added].

**2.** See note 1 *supra.*

**3.** The Indiana statute reads in pertinent part:
Paroles—Procedure—Rules and regulations—Not applicable to persons imprisoned for misdemeanor.—
(a) The Indiana parole board is authorized to release on parole, pursuant to the laws of Indiana, any person confined in any penal or correctional institution in this state except persons under sentence of death. It shall conduct hearings at each correctional institution at such time as may be necessary for a full study of the cases of prisoners eligible for release on parole and to determine when and under what conditions and to whom parole may be granted. All paroles shall issue upon order of the board, duly adopted. Notwithstanding this subsection, prisoners who are sentenced under IC 35–50 [35–50–1–1—35–50–6–6] shall be released on parole in accord with IC 35–50[35–50–1–1—35–50–6–6].

(b) Within one [1] year after his admission and at such intervals thereafter as it may determine, the Indiana parole board shall secure and consider all pertinent information regarding each prisoner, except prisoners under sentence of death, including the circumstances of his offense, his previous social history and criminal record, his conduct, employment and attitude in prison, and the reports of such physical and mental examinations as have been made.

(c) Before ordering the parole of any prisoner, the Indiana parole board shall have the prisoner appear before it, and shall interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment, or for his maintenance and care, and only when the Indiana parole board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. Notwithstanding this subsection, prisoners who are sentenced under IC 35–50 [35–50–1–1—35–50–6–6] shall be released on parole in accord with IC 35–50.

(d) Every prisoner while on parole shall remain in the legal custody of the warden or superintendent of the institution from which he was paroled but shall be subject to the orders of the Indiana parole board.

(e) The Indiana parole board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the conduct of parole hearings or conditions to be imposed upon parolees. Whenever an order for parole is issued it shall recite the conditions thereof.

(f) This chapter does not apply to persons committed to imprisonment for commission

*Indiana Parole Board*, Ind., 397 N.E.2d 259 (1979), the Indiana Supreme Court distinguished its state statute from the Nebraska statute:

> Our parole release statute *creates no expectancy of release* as envisioned in the Nebraska statutory scheme; rather, our Legislature has invested the Parole Board with almost total discretion in such matters.

397 N.E.2d at 263 [emphasis added].[4]

■■■ Since "the sufficiency of the claim of entitlement must be decided by reference to state law," *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2076, 48 L.Ed.2d 684 (1976) [footnote omitted], and since we have an authoritative interpretation by the Indiana Supreme Court of the rights created by its state's parole statute, see *Bishop, supra*, 426 U.S. at 345, 96 S.Ct. at 2077; *Greenholtz, supra*, 422 U.S. at 12, 99 S.Ct. at 2106, we hold that Indiana state prisoners do not have a protectible interest in being paroled. We do not hear plaintiff to complain that the Parole Board did not comply with the procedures set out in the statute; rather, he argues that the procedures do not comport with due process. Because of our holding that the Indiana parole statute does not create a constitutionally protectible interest, plaintiff's procedural due process arguments must fail.

### III

Plaintiff and *amici* also argue that the Indiana Administrative Adjudication Act, Ind.Code § 4–22–1–1 *et seq.*, prescribes certain procedures which must be followed by the Parole Board. Without discussion, the district court concluded that the Indiana A.A.A. expressly exempted from its coverage the Indiana Parole Board.

Because no Indiana appellate court has specifically decided whether the A.A.A. is applicable to Parole Board proceedings, defendants argue that the district court should have abstained from deciding the question. See *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Amici* correctly point out, however, that abstention is the exception rather than the rule and that *Pullman*-abstention "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1182, 14 L.Ed.2d 50 (1965). *Amici* further argue that it is quite clear under Indiana law that the A.A.A. applies to parole proceedings. While we agree with *amici* that abstention is *not* required in this case, we disagree with their interpretation of Indiana law. We hold that the Indiana A.A.A. does *not* apply to Parole Board proceedings.

The A.A.A. was enacted in 1947 and since that time, has expressly excluded from its coverage reformatory or penal institutions. Ind.Code § 4–22–1–2. Because each penal institution had a separate parole board until 1961, defendants argue that parole proceedings were expressly excluded from A.A.A. coverage. We agree.

In 1961, however, the state-wide Indiana Parole Board was created to replace the individual boards within each penal institution. *Amici* strongly contend that the State Parole Board no longer falls under the reformatory or penal institution exception in the A.A.A., particularly in light of the Indiana Supreme Court decision in *Indiana State Personnel Board v. Parkman*, 252 Ind. 44, 245 N.E.2d 153 (1969).

---

of a misdemeanor. Such persons shall be discharged by the state agency having their custody, according to law.

Ind.Code § 11–1–1–9. The statute is quoted above as it reads since a 1978 amendment. The substance of the statute has been the same throughout the period in question; the amendment merely added the subsection designations and made a few minor changes in wording.

4. While the *Murphy* court proceeded to evaluate the inmate's claims under the procedures prescribed in the parole statute, we do not read that as a retreat from its clear assertion that the Indiana statute did not create a protectible expectation of release. Instead, we read it as an attempt to determine whether the actions by the Parole Board in that case complied with the procedures mandated by the statute itself, not by the Due Process Clause of the Constitution.

The relevant facts of *Parkman* are as follows. The Hospital Administrator at the Indiana State Prison was suspended and ultimately fired. He appealed to the Indiana State Personnel Board, which upheld his dismissal; he then appealed the decision of the Personnel Board by filing suit ·in state court. The Indiana Supreme Court held that the suit should have been dismissed because the former administrator had not followed the proper appellate procedures set out in the A.A.A. *Amici* in the case at bar rely heavily on the following language in *Parkman*:

That the person affected by a decision of the Personnel Board is an employee of an exempt agency does not mean that the Personnel Board or its decision is thereby exempted from the provisions of the Administrative Adjudication Act.

245 N.E.2d at 156. Because we can readily distinguish the Indiana Parole Board from the State Personnel Board, we do not find *Parkman* controlling.

In reaching its decision, the *Parkman* court relied on a section of the A.A.A. which provided:

All general or special laws or parts of laws in conflict herewith are hereby specifically repealed   .   .   ..

Ind.Code § 4–22–1–28. Since Parkman had relied on procedures outlined in a statute in force before the enactment of the A.A.A., and since those procedures were not "uniform" with A.A.A. procedures, the court concluded that the express intent of the A.A.A. was to supersede the old conflicting statute. 245 N.E.2d at 155. The Parole Board procedures in this case present an entirely different situation.

As discussed above, at the time the A.A.A. was passed, parole boards were expressly excluded from its coverage because they were departments within exempt reformatories and penal institutions. Therefore, unlike the superseded procedures considered in *Parkman*, the procedures of the individual parole boards were specifically exempted, *not* "specifically repealed," by the passage of the A.A.A.

■ The question remains, however, whether the replacement of the individual prison parole boards with the state-wide Parole Board in 1961 brought the parole procedures within the coverage of the A.A.A. We think not. In creating the Indiana State Parole Board, the Legislature outlined certain procedures to be followed in making parole determinations. From its inception, the Parole Board has followed only the procedures in the parole statute, assuming that it was exempt from the A.A.A. For nearly twenty years, the Indiana Legislature has acquiesced in the Board's procedures. Legislative silence should not by itself be determinative, nor should it *always* be significant; in this case, however, and in light of the history of the Parole Board and the A.A.A., we find it strong support for holding the Parole Board exempt from the A.A.A. See *State ex rel. O'Neal v. Cros*, Ind.App., 378 N.E.2d 10, 13 (1978).

IV

■ Plaintiff also argues that the Double Jeopardy Clause of the Fifth Amendment prohibits the Board from relying on the seriousness of his offense as a reason for denying him parole. This argument clearly must fail.

■ The Double Jeopardy Clause protects a defendant in a criminal proceeding against multiple punishment or repeated prosecutions for the same offense, *U. S. v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976); its protections are not triggered by the denial of parole. Rather than constituting another punishment for the same offense, the denial of parole merely perpetuates the status quo: the prisoner remains incarcerated under a validly imposed sentence. *Roach v. Board of Pardons and Paroles*, 503 F.2d 1367, 1368 (8th Cir. 1974); *Carlisle v. Bensinger*, 355 F.Supp. 1359, 1362 (N.D.Ill. 1973). Indeed, in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court recognized that parole determinations must necessarily in-

clude the seriousness of the offense. *Id.* at 15, 99 S.Ct. at 2107.

We affirm the result reached by the district court with the modifications discussed above.