Lincoln LOVE a/k/a Lokmar Yazid
Abdul-Wadood, Plaintiff,

v.

Jack DUCKWORTH, Superintendent, Indiana State Prison, Michigan City, Indiana, and all Other Agents of the State of Indiana Employed at Said Institution, Defendants.

No. S82–0056.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 12, 1983.

**1068**

Timothy M. Mikula, LaPorte, Ind., for plaintiff.

Linley E. Pearson, Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

This case was filed under 42 U.S.C. § 1983 by an inmate at the Indiana State Prison against a superior court judge, prosecutor, and deputy prosecuting attorney, all of LaPorte County, Indiana, and the superintendent of the Indiana State Prison at Michigan City, Indiana, as well as "all other agents of the State of Indiana, employed at said institution." On August 17, 1982, this Court granted defendants' Motion to Dismiss as to the prosecuting and deputy prosecuting attorneys, and on August 24, 1982, *sua sponte* ordered the dismissal of defendant Robert Gettinger, Special Judge of the Superior Court for LaPorte County. This case was tried before the Court, sitting without a jury, at the Indiana State Prison on August 24, 1982. At the conclusion of the trial, counsel for both parties were ordered to file simultaneously with the Court their proposed findings of fact and conclusions of law, which has been done. The complete record has been carefully reviewed by this Court in reaching its decision. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, this memorandum of decision and order constitutes this Court's findings of fact and conclusions of law.

The plaintiff, Lincoln Love, is presently incarcerated at the Indiana State Prison, after having been convicted in state court of murder, murder in perpetration of a robbery, and robbery. For reasons which are irrelevant to the case at hand, plaintiff was removed from the prison's general population in September, 1979, and placed in a disciplinary segregation unit. While in this segregation unit, plaintiff took part in a disturbance at the prison that occurred between April 26, 1980 and May 1, 1980, in which inmates held several corrections personnel hostage. As a result of his involvement, plaintiff was tried in state court on a charge of kidnapping. Plaintiff was convicted on July 7, 1982 of kidnap, and was sentenced to thirty years.

Although plaintiff was originally scheduled to be released from the disciplinary segregation unit to the prison's general population in September, 1980, the plaintiff was ordered kept in segregation for administrative reasons following the filing of formal criminal charges in state court on August 12, 1980 stemming from the incidents of April 26 through May 1, 1980. Plaintiff appeared before the prison's Classification Committee on August 18, 1980, regarding his being classified for administrative segregation. At that hearing, plaintiff declined the use of a lay advocate, choosing instead to represent himself. Nonetheless, plaintiff failed to present any evidence or to call any witnesses on his behalf. Because plaintiff had accumulated a lengthy record of assaultive and disruptive behavior while at the prison, and the charge of kidnap had only recently been filed against him by the State, it was decided that plaintiff be kept in administrative segregation at least pending the outcome of the state criminal action.

At the bench trial in this § 1983 action, plaintiff was represented by private counsel. The only issue raised and argued was whether the defendants, Jack Duckworth, "and all other agents of the State of Indiana, employed at said institution," violated the Due Process clauses of the Fifth and Fourteenth Amendments by improperly applying Department of Correction guidelines and procedural policy in placing the plaintiff in administrative segregation.

■ Before proceeding to the substance of plaintiff's case, the issue of naming "all other agents of the State of Indiana, employed at said institution," as defendants must be addressed. No such agent or em-

ployee has been named as a defendant or served with process required by Rule 4, Federal Rules of Civil Procedure. Plaintiff, represented by counsel of his own choosing from the outset of this litigation, never identified the persons whom he intended to be defendants within the description in the caption. Therefore, and assuming that the caption and allegations are the equivalent of using "Doe pleadings" (which the Court need not decide in light of the failure even to attempt to name or add parties-defendant), no claim lies against the undisclosed and unnamed persons. *United States ex rel. Lee v. People of the State of Illinois,* 343 F.2d 120 (7th Cir.1965); *Nugent v. Sheppard,* 318 F.Supp. 314 (N.D.Ind.1970). *See also, Glaros v. Perse,* 628 F.2d 679, 685 (1st Cir.1980); *Morrow v. Igleburger,* 67 F.R.D. 675, 686 (S.D.Ohio, 1974), *aff'd,* 584 F.2d 767 (6th Cir.1978).

■ As can be seen from the above, the only defendant is the Superintendent, Jack R. Duckworth, against whom plaintiff seeks damages. Therefore, plaintiff must prove personal involvement, or at least a knowing disregard, on the part of the defendant concerning alleged deprivation of constitutionally protected rights. *Stringer v. Rowe,* 616 F.2d 993 (7th Cir.1980); *Adams v. Pate,* 445 F.2d 105 (7th Cir.1971); *see also Crowder v. Lash,* 687 F.2d 996 (7th Cir.1982). No evidence was proffered which would establish any personal involvement of Defendant Jack Duckworth. Therefore, even were there a violation of some constitutional right, the Defendant could not be found liable. It is axiomatic that merely being in a supervisory capacity does not render one liable for every action or incident at the institution. Plaintiff has offered no proof of personal involvement, and it would be inconsistent with the personal involvement requirement to hold the Superintendent liable for any act or omission of which he could possibly have been apprised at some time. *See, McBride v. Soos,* 679 F.2d 1223 (7th Cir.1982); *Dommer v. Crawford,* 653 F.2d 289 (7th Cir.1981).

Assuming, *arguendo,* that plaintiff is not barred from prosecuting his claim by his failure to allege or prove any personal involvement on the part of defendant Duckworth, an analysis of plaintiff's due process claim involves a two-step process. First, there must be a determination as to whether the Due Process clause applies; and second, if it be determined that the clause is applicable the issue then becomes one of what process is due.

■ Although it has been held that a classification proceeding is not equivalent to a disciplinary proceeding, *Owen v. Heyne,* 473 F.Supp. 345 (N.D.Ind.1978), aff'd, 605 F.2d 559 (7th Cir.1979), it is clear that prisoners may not be deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In this case, plaintiff contends that he was denied due process of law by the actions of the Classification Committee. In determining whether the Due Process Clause is applicable, one must review—on a case-by-case basis—the nature of the interest involved. The focus of the question is whether there is a legitimate, non-unilateral expectation that something will not occur absent specified events. In this case, the question thus must be decided by focusing upon whether Plaintiff could expect to remain in the general population of the Prison absent a finding that a particular event had occurred. *Daigle v. Hall,* 564 F.2d 884, 885 (1st Cir. 1977). Although appearances are made before the Classification Committee, that does not mean that there must be such appearances. *Id,* at 886 n. 2. The fact that the policy (Plaintiff's Exhibit 2) sets certain procedures and incorporates the Disciplinary Policy (Defendant's Exhibit D) does not answer the question of whether the Due Process Clause applies. Viewing such facts from another perspective, the Supreme Court has held that if an entitlement is found, the process that is due must be determined not from the state-created procedures but from the Constitution itself. *Vitek v. Jones,* 445 U.S. 480, 490 n. 6, 100 S.Ct. 1254, 1262 n. 6, 63 L.Ed.2d 552 (1980). Therefore, the setting of procedures by a state cannot answer the question of wheth-

er any process is due under the Constitution.

■ There is no legitimate expectation that an offender will remain in the general population of the Prison absent the finding of particular events. The decision to classify a person into Administrative Segregation turns "on purely subjective evaluations and on predictions of future behavior." *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981). It is an informed prediction based not upon what an offender has done but upon what he is and what he may become. *Greenholtz v. Inmates of Nebraska Penal Complex,* 442 U.S. 1, 10, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979). In *Greenholtz,* the Supreme Court held that the parole board could deny early release on the basis of a review of the record and a personal interview of the offender. *Id.,* at 15, 99 S.Ct., at 2107. Since the issue is not the existence of specified events, no liberty interest is implicated. *Daigle v. Hall, supra.*

The Administrative Segregation philosophy (Plaintiff's Exhibit 2, p. 1, part I.A.) is for all practical and legal purposes identical to the basis for inter-institutional transfers considered in *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976): "what would best serve institutional security or the safety and welfare of the inmate." The Supreme Court having found that no liberty interest is implicated in arriving at the decision to transfer the offender in *Meachum,* the same conclusion must be reached here. As in *Meachum,* there is in the Administrative Segregation policy and philosophy no "shall ... unless" language found critical by the Supreme Court in *Greenholtz.* In this regard, the policy is indistinguishable from the parole statutes in Indiana, which have been held to create no constitutionally protected interest. *Averhart v. Tutsie,* 618 F.2d 479, 482 (7th Cir.1980).

Plaintiff relies upon *Wright v. Enomoto,* 462 F.Supp. 397 (N.D.Cal.1976), *aff'd mem.,* 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978). It should be noted that a summary affirmance is merely an affirmance of the judgment and not an endorsement of the reasoning of the lower court. *Illinois State Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 182–83, 99 S.Ct. 983, 989–90, 59 L.Ed.2d 230 (1979); *Mandel v. Bradley,* 432 U.S. 173, 176–77, 97 S.Ct. 2238, 2240–41, 53 L.Ed.2d 199 (1977). Further, *Wright* is distinguishable from this case because the District Court found that the practices challenged in that case effectively precluded consideration of the affected offenders for parole. There is no such evidence in this case. Finally, an effect on parole is a much more substantial impact than has been demonstrated in this case. *See, Meachum,* at 225, 96 S.Ct., at 2538.

Plaintiff also relies in *Helms v. Hewitt,* 655 F.2d 487 (3rd Cir.1981), *cert. granted,* 455 U.S. 999, 102 S.Ct. 1629, 71 L.Ed.2d 865 (1982). In that case, the Third Circuit held that process was due because administrative custody was restricted under the regulations of the Pennsylvania Bureau of Corrections to offenders who met certain objective criteria. *Id.,* at 497. Here, however, the procedure in Indiana does not restrict the discretion of officials to place offenders in Administrative Segregation status only after particular events. Nor—as is shown below—has that discretion been abused.

Although it is the conclusion of this Court that the Due Process Clause is not applicable to the facts of this case, even if the Due Process Clause were to be found applicable, the procedures used were more than sufficient to meet the requirements of due process of law.

The administrative segregation procedures of which plaintiff complains are designed to separate from the prison's general population those offenders whose behavior has a negative effect on their own, as well as on other inmates', treatment. Segregation is also designed to protect those threatened by the behavior of such offenders, as well as to protect the offender himself. Further, segregation acts to prevent interference by the offender with the necessary gathering of facts and the preparation and presentation of the criminal prosecution.

In *Owen v. Heyne,* 473 F.Supp. 345, (N.D.Ind.1978), *aff'd,* 605 F.2d 559 (7th Cir. 1979), the plaintiff was assigned to Administrative Segregation at this same institution. This Court held that all necessary process was rendered when the plaintiff appeared personally before the Classification Committee and was able to discuss the case with the members. Plaintiff in this case, by his own testimony, personally appeared and was able to and did discuss the case with Mr. Edward Jones, the Chairman, and the other members. In addition, Plaintiff had the opportunity to have a lay advocate, while it is not required under *Owen v. Heyne,* there being no discussion of lay advocates in that case. Further, Plaintiff had the opportunity to call witnesses before the Committee, while the plaintiff in *Owen* did not. Plaintiff received more procedure than did the plaintiff in *Owen,* and in *Owen* this Court upheld the procedures used, which decision was affirmed in an unpublished order by the Seventh Circuit. Therefore, Plaintiff was not denied the process due even if the Due Process Clause applies.

The thrust of Plaintiff's evidence and argument seems to be that he was not the type of offender who could be placed on Administrative Segregation status. However, it is virtually unchallenged, and it is uncontroverted by evidence that Plaintiff is precisely the type of offender who should be segregated. As shown by the recitation of Plaintiff's institutional conduct through the testimony of the Superintendent, Plaintiff not only is a threat to the welfare and safety of other offenders and of staff, he has a documented history showing that the threat is an actuality. The history of assaultive and other anti-social behavior in the three years in the Department of Correction is lengthy, culminating in the taking of hostages. No one can doubt the necessity of segregating and controlling such an offender. Likewise, it cannot be doubted that the actions of correctional officials can be prophylactic and not merely reactive. Even the cases relied upon by Plaintiff uphold the right of a correctional institution and those charged with its administration to segregate violent offenders.

In addition to his history, Plaintiff was at the time of his assignment under outside criminal charges for acts within the Prison. The Superintendent's conclusion, based upon his experience, that such persons pose a security threat and a threat both to themselves and to others is uncontradicted by any evidence. Cross-examination of the Superintendent reveals that Plaintiff disagrees, but that hardly constitutes a sufficient basis upon which to reject a correctional administrator's reasoned, experienced prediction of behavior within the Prison. Further, logic compels one to the same conclusion. In the closed society of a penal institution, one can foresee the problems with allowing an offender in Plaintiff's circumstances freedom to move about the institution. In *Wolff v. McDonnell,* at 561–62, 94 S.Ct., at 2977–78, the Supreme Court discussed the nature of a prison in determining what procedures would apply in disciplinary cases:

> Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so. Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends. They may have little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life. Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock. Guards and inmates co-exist in direct and intimate contact. Tension between them is unremitting. Frustration, resentment, and despair are commonplace. Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

Given this atmosphere, the need to segregate those who are charged with crimes and

who have an even greater interest in avoiding further sentences than one who merely faces disciplinary time, the need to segregate the criminally charged offender from those—both offenders and staff—who will take part in the criminal proceeding is manifestly evident. Given Plaintiff's assaultive history, the necessity is overwhelmingly obvious.

Therefore, based on the record and the evidence produced at trial, Plaintiff's claims cannot stand up to close scrutiny, because he is the type of offender for whom administrative segregation was designed, and he received more than sufficient procedure due him.

Based on the above, the Court now finds for the DEFENDANT, Jack R. Duckworth, and against the plaintiff, Lincoln Love.