NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3606

_____

UNITED STATES OF AMERICA

v.

STEPHEN MATAKOVICH,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-16-cr-00073-001)
District Judge:  Honorable Cathy Bissoon

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 12, 2018

BEFORE:  JORDAN, NYGAARD, and VANASKIE *Circuit Judges*

(Opinion Filed:  December 28, 2018)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

NYGAARD, *Circuit Judge.*

I.

A jury convicted former police officer Stephen Matakovich of using excessive

force, in violation of 18 U.S.C. § 242. He appeals from the judgment of conviction and

sentence, challenging the District Court's denial of his motion for judgment of acquittal.

He also argues that a post-arrest dash-cam video should have been admitted into

evidence. We will affirm.

II.

A.

Matakovich complains that the District Court erred by denying his motion for

judgment of acquittal because there is insufficient evidence that he used excessive force.[1]

"We exercise plenary review over a district court's grant or denial of a motion for

judgment of acquittal based on the sufficiency of the evidence."[2] We will uphold the

conviction if, upon viewing the evidence in the light most favorable to the government, it

---

[1] To convict under Section 242 of Title 18 of the United States Code, the government must prove beyond a reasonable doubt that: "(1) the defendant's acts must have deprived someone of a right secured or protected by the Constitution or laws of the United States; (2) the defendant's illegal acts must have been committed under color of law; (3) the person deprived of his rights must have been an inhabitant of a State, Territory, or District; and (4) the defendant must have acted willfully." *United States v. Senak*, 477 F.2d 304, 306 (7th Cir. 1973) *cert. denied*, 414 U.S. 856 (1973). Matakovich challenges only that there is sufficient evidence to prove that Gabriel Despres was deprived of his right not to be subjected to excessive or unreasonable force.

[2] *United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011) (quoting *United States v. Starnes,* 583 F.3d 196, 206 (3d Cir.2009)).

would permit a reasonable jury to find the elements of the crime beyond a reasonable doubt.[3]

Matakovich does not deny that he shoved and punched Gerard Despres on the night of November 28, 2015. Rather, he relies on three arguments to assert that the force he used was not excessive. Matakovich argues that—using factors applied to excessive force claims raised in a civil context[4]—no jury would conclude that his actions towards this drunk, uncooperative man were unreasonable in these circumstances. In support of this, he notes that the Government concedes Despres was intoxicated and was uncooperative, and that it did not challenge Despres' arrest.

Next, he says the Government portrayed him as the aggressor, in part, by introducing evidence of his temperament on that night, an improper subjective factor that does not belong in an objective analysis.[5] Although he makes no explicit claim of prejudice, he implies that this prejudiced the jury's consideration of his testimony on aspects of the event that only he observed, as an officer trained to prevent aggression and

---

[3] *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010).
[4] *Mellott v. Heemer*, 161 F.3d 117, 122 (3d Cir. 1998) (citing *Graham v. Connor,* 490 U.S. 386, 397 (1989); *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)) (Using a case-by-case approach we examine the severity of the crime, the immediacy of the threat to the safety of the officers posed by the suspect, and whether there was active resistance to arrest. The analysis of the reasonableness of the force used is judged from the viewpoint of a reasonable officer.).
[5] Oates portrayed Matakovich as unhappy that he was called away from the game to deal with Despres. A. 237-38. Wise testified that Matakovich was "irritated" that Despres had not left. A. 282. Mr. Jackson, a Landmark employee present at Gate 5 on that night viewed him as "angry" and "frustrated." A. 409.

confrontational outbursts.[6]  He argues that his observations were essential to assess the reasonableness of his actions to subdue Despres.[7]

Finally, Matakovich argues that there was simply no evidence to prove that, after he first shoved Despres to the ground, the force he continued to use exceeded what was necessary to make the arrest.[8]  In other words, he maintains that all of his physical contact with Despres was solely in reaction to Despres' conduct and his refusal to submit to being arrested.[9]

None of these arguments are persuasive, given the overwhelming amount of corroborated evidence.  A brief summary of the record follows.

## B.

Gerard Despres, a teenaged boy, tried to enter Heinz Field in Pittsburgh to watch a high school football championship game.[10]  Personnel from Landmark Event Staffing (a firm that provides unarmed event-security at the stadium) refused to let him enter because

---

[6] Matakovich makes a confusing statement in his brief that appears to admit—following his acquittal on obstruction charges—that he misrepresented Despres' conduct.  Brief for Appellant at. 21-22.  Given the equivocal nature of his statement, and statements made elsewhere in his brief (*Id.* at 9-10) we will not regard it as an admission.

[7] He asserts that Despres turned and "bladed" his stance, clenched his hands in fists, and shifted his weight to the balls of his feet.  A. 484-486.  Convinced tht Despres was "poised to strike" (A. 487) Matakovich shoved Despres to create a "reactionary gap."  A. 595.  After this Despres stood up and and said "What the f***?"  A. 487.

[8] After Matakovich created a "reactionary gap" by shoving Despres, Matakovich says the man physically resisted his attempts to arrest him.  A. 487-491.

[9] Matakovich points to testimony that Despres was "belligerent," but that testimony refers to Despres' interaction at the first gate.  A. 180.  There is no such testimony about Despres' interaction with Matakovich.

[10] A. 122-23.

he showed signs of being intoxicated. So he eventually wandered to another gate.[11] Landmark manager Sean Oates followed the procedure for a "gate denial."[12] He summoned Stephen Matakovich, a Pittsburgh police officer (at that time) who was working an "off-duty detail" in the stadium that evening.[13] From a control room, an employee of U.S. Security (the company providing 24-hour security at the stadium) adjusted a surveillance camera to record Matakovich's encounter with Despres.[14] Despres was beginning to leave when Matakovich, Oates, and another person from Landmark—William Wise—walked up to him.[15] Despres appeared "very confused" and had a hard time staying on his feet.[16]

Despres asked the trio to let him into the stadium and, at first, did not move when Matakovich used an expletive and ordered him to leave.[17] Despres then turned to walk away[18] and Matakovich began taunting him.[19] Upon hearing this, Despres stopped and turned back to Matakovich and stared at him.[20] After a pause—Matakovich moved

---

[11] *Id.*

[12] A. 122-23.

[13] A. 218; 237-38.

[14] A. 371-72.

[15] Vid. 8:36: 44; A. 269-70.

[16] A. 129-30.

[17] A. 131.

[18] Vid. 8:37:12.

[19] A. 281; 133. Matakovich says this was in response to Despres asking if they could take him to his friends, but no one else testifies to this. A. 483. He goes further, minimizing the taunt by calling it "snarky but non-threatening." Brief for Appellant at 23.

[20] Vid. 8:37:13. Matakovich described his turning away as "pacing" rather than moving away, declaring that Despres was still engaging him, but no one else describes it this way. A. 483. He also says that he shoved Despres to the ground to create a "reactionary gap" after Despres turned back around and said, "What the f***?" A. 488.

toward Despres and forcefully shoved him to the ground.[21] Matakovich shoved him a second time after Despres tried to stand up,[22] and then repeatedly punched his head and body. This lasted eighteen seconds.[23] Despres ended up on the ground in a fetal position with Matakovich over him.[24]

Eyewitnesses testified that Despres did not pose a threat at any point.[25] Rather, he appeared to not understand what was going on.[26] Wise said he helped restrain Despres after he was on the ground mainly to "get it over with."[27] Wise was disturbed "about how he was hit" because it was "unnecessary."[28] Oates silently agreed with Despres' complaints immediately afterward that it "wasn't right."[29] Oates testified that he was upset because Matakovich's conduct was unnecessary.[30]

## C.

In light of this evidence, even were we to apply the *Mellott* factors, and agree *arguendo* that the evidence of Matakovich's temperament was improperly introduced, we will not disturb the District Court's ruling on the judgment of acquittal. There are

---

[21] Vid. 8:37:31.

[22] Vid. 8:37:36.

[23] Vid. 8:37:37-55.

[24] Vid. 8:37:58. Wise testified that Matakovich said nothing throughout this period. A. 286.

[25] Oates expressed surprise at Matakovich's shove because, in his opinion, Despres was willing to comply and leave. A. 155. Wise concurred with the lack of perceived risk of harm in that moment, saying that Despres "posed no threat." A. 284, 297. William Chernosky, a U.S. Security employee assigned to Gate 5 that evening, testified that Despres did not appear to be aggressive or threatening throughout this time. A. 269.

[26] A. 131-2.

[27] A. 215.

[28] *Id*.

[29] *Id.*

[30] A. 168-69.

6

circumstances in which a trained officer's observations trump those of untrained eyes.

But the amount of evidence here from persons who were only feet away[31]—corroborated

by video—that characterize Despres as non-threatening, confused, and struggling to

protect himself from punches is compelling. A reasonable jury could conclude on this

record that Matakovich's perceptions of Despres as a drunk young man who was itching

for a fight—justifying his initial use of force—were simply not credible. The same is

true about Matakovich's claim that his continued use of force was justified because

Despres violently resisted arrest. No one interpreted Despres' response to Matakovich as

aggressive. The eyewitness and video evidence is overwhelmingly supportive of a

reasonable jury's conclusion that the force Matakovich used was unreasonable and

excessive.[32]

### III.

He next challenges the District Court's refusal to admit a post-arrest video

recording from a dash-cam that captured Despres' comments while being transported

from the hospital to the jail.[33] He contends the evidence is probative of whether Despres

---

[31] *See e.g.* A. 286.

[32] Matakovich insists that the injuries Despres sustained were minor, that the altercation was only thirty seconds, and Despres actively resisted arrest. But these do not outweigh Matakovich's grossly disproportionate response to the circumstance he encountered.

[33] Counsel for Matakovich summarized the content of the video:

> He asks the officers to tell your chunky buddy cop that he can't punch. He says, that guy wasn't trying to hurt me. He says -- I'm lost on it right now. He says that -- he indicates that he was punched when he was handcuffed, which is not what happened. He calls Mr. Matakovich various names, says he punches like a pussy. Those are the ones that I can

7

was injured, whether Matakovich used unreasonable force, and whether he intended to use excessive force. The Government argues that Matakovich waived his arguments on whether the force was unreasonable, and also on his intent to use unreasonable force. We review the District Court's decision to exclude evidence for an abuse of discretion, when the issue has been properly preserved.[34]

Both parties agree that Matakovich preserved his argument that the evidence was admissible to show that Despres' injury was not severe, so we will begin there. Once it has been established that the defendant caused a physical injury, the severity of the injury is not a controlling element.[35] Here, all of the eye-witnesses testifying on the topic said

---

> think of. I think that the transport video is also relevant just to show Mr. Despres, his general behavior at that time because he's asking the police officers who are transporting him to take a Snapchat with him so that he can send it to his friends. He talks about how much alcohol he ingested that night and the fact that he was drinking Captain Morgan. He asks them, one of the police officers, something comes over the radio saying that there's a rave in progress and Mr. Despres says, hey, let's go to that. Give me your coat, give me your cop coat and I'll go in. So I think his general demeanor, which is also I think not hearsay and so it would be admissible to show that he's relatively unaffected by everything that happened that night.

A. 39.
[34] *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 517 (3d Cir. 1997).
[35] *See United States v. Myers*, 972 F.2d 1566, 1572-73 (11th Cir. 1992). Matakovich admits to punching Despres in the face, and that Despres had a bloody nose afterward. A. 381. Two witnesses also testified to seeing injuries after Matakovich shoved and punched Despres, noting cuts to the side of Despres' head and red marks on his neck, (A. 299) marks on his nose and blood, and "general puffiness." A. 163. A third witness, who only saw Despres when he was transporting him, recalls Matakovich telling him that he punched Despres, and the witness recalls assuming at that time that Despres' bloody nose came from this. A. 619.

that Despres had no visible injuries before Matakovich approached him, but did afterward.[36]  There is also photographic evidence.[37]  All of this shows sufficient evidence of injury.  It is inconceivable, given this evidence, that a video capturing comments by Despres about the event many hours later would convince a jury that he was not injured.

Matakovich's remaining arguments—that the evidence showed he did not intend to use excessive force, and that the force was not, in fact, excessive—fair no better.  As we concluded above, it is inconceivable—to the degree it would even be relevant outside an impeachment context—that a video capturing comments by Despres many hours later would change the jury's conclusions about Matakovich's intent.  This is particularly so given that his comments concerned events that happened while he was intoxicated.  We reach the same conclusion regarding the excessiveness of the force he used, given the degree of corroboration among eyewitnesses and the video.  As a result, the District Court did not abuse its discretion to limit the admissibility of this evidence to impeachment.

IV.

For all of these reasons, we will affirm the order of the District Court.

---

[36] A. 151, 250, 268, 299.
[37] A. 934.